McKENZIE *v.* MURRAY.

DEEDS—CANCELLATION OF INSTRUMENTS—UNDUE INFLUENCE—EVI-
DENCE—SUFFICIENCY.

> In a suit to set aside a deed on the grounds of mental
> incapacity and undue influence, evidence that said deed
> was executed pursuant to a contract made about 15 years
> before by grantor, now deceased, with defendant and her
> mother, to give to them his property if they would live
> with him and care for him during his lifetime, which con-
> tract they have faithfully carried out, *held*, to justify dis-
> missal of the bill.

Appeal from Ingham; Wiest (Howard), J. Sub-
mitted June 22, 1921. (Docket No. 45.) Decided
July 19, 1921.

Bill by James McKenzie against Jane Sutherland
Murray to set aside a deed. From a decree dismiss-
ing the bill, plaintiff appeals. Affirmed.

*L. B. Gardner* and *Roy M. Chrouch,* for plaintiff.

*Cummins & Nichols* and *Carl H. McLean,* for de-
fendant.

FELLOWS, J. This chancery appeal presents ques-
tions of fact alone. George McKenzie was a carpenter
and builder. He came to Lansing in 1866 from Can-
ada where he had several brothers and sisters. His
brothers and sisters all seem to have had families, but
he never married. He was industrious and thrifty
and in 1903 was the owner of four houses well located
in Lansing and all occupied by tenants. He was liv-
ing in rooms over a drug store. He was at this time
over 60 years old. Willena Murray, the mother of

defendant, was then a widow and the sole surviving sister of Mr. McKenzie. She was then living near Woodstock in the Province of Ontario. The family consisted of Mrs. Murray, defendant, then a woman past 40, and a niece of Mrs. Murray about 15 years old. At Mr. McKenzie's request defendant came to Lansing to visit him and as a result it was arranged that they should give up their home and come to live with Mr. McKenzie in one of his houses. Mr. McKenzie arranged with one of his tenants to vacate, and there is testimony of a disinterested witness of the highest character, for a time tenant and for a long time neighbor of Mr. McKenzie, that he came to her house and arranged with her that defendant and her mother should stay at her house until Mr. McKenzie's house was settled, and that he then told her that defendant and her mother were to remain with him and care for him during the remainder of his life and were to have his property when he was gone. Mr. McKenzie had never before had a home of his own, he was not as strong as in former years, and the testimony shows beyond dispute that defendant for the balance of her uncle's life covering a period of 15 years devoted herself to maintaining the home for him and in looking after his wants and his comfort. The testimony is likewise beyond dispute that her kindness and consideration was appreciated by him. To a number of his intimate friends and acquaintances he made known the fact that he intended defendant should have his property when he was through with it. The McKenzie home was located near the capitol and the family took roomers, using the money for the maintenance of the family, Mr. McKenzie furnishing whatever further sum was needed. In 1911, Mr. McKenzie made a will giving the land involved in this suit to defendant and her mother and to the survivor; he likewise gave them the household furniture and his

personal effects; the balance he divided between two nieces and a grandniece.    Defendant's mother died in 1912 and shortly thereafter Mr. McKenzie made another will like the former one except that he gave to defendant what he had formerly given to her and her mother jointly.    In 1916, he made another will giving to each of the two nieces and the grandniece $500, and the balance to defendant.    The two nieces having died, in April of 1918, he added a codicil giving their bequests to defendant.

In the fore part of December, 1918, Mr. McKenzie's condition became such that his family physician was called.    He had a growth on the side.    The doctor, being apprehensive that it was a cancer, advised an operation and one was arranged for the 17th.    On December 13, Mr. McKenzie executed the deed which is sought to be set aside by these proceedings.    It was prepared by a reputable attorney of Lansing and conveyed three houses and the lots upon which they were located, Mr. McKenzie having theretofore sold one of his houses.    The deed by Mr. McKenzie's directions was placed in the hands of J. Edward Roe, then cashier of the Lansing State Savings Bank, with written instructions to retain until his death and on the happening of that event to be delivered to defendant.    At the same time two certificates of deposit issued by the City National Bank for $1,000 each were placed in escrow with the president of that bank with like instructions. The operation revealed that Mr. McKenzie had a cancer and that he was beyond relief.    He died on December 29th.

Plaintiff, a nephew of deceased, files this bill on behalf of himself and other nephews and of nieces asking relief on the ground of mental incapacity and undue influence.    A careful reading of this record discloses not a scintilla of evidence tending to show mental incapacity.    If we accept the contention of plain-

tiff's counsel that the case falls within the class of cases where the defendant has the burden of establishing a want of undue influence, and examine the record with the presumption against her, it would avail plaintiff nothing as the evidence convinces us beyond shadow of doubt that the deed was not the result of influence, undue or due, but was the deliberate act of deceased pursuant to a fixed abiding purpose held over a period of 15 years.

It developed upon the hearing that Mr. McKenzie in his lifetime gave defendant some bank stock, Liberty bonds and money. The amount was not as large as claimed by plaintiff but it was substantial. But the property was the property of Mr. McKenzie and it was for him to control its disposition. Whatever he gave we are satisfied was given by his own free act and was not the result of undue influence. Some witnesses testify to statements made by defendant which it is claimed by plaintiff's counsel sustain plaintiff's claim of undue influence; these she denies. Counsel also assail her testimony given in the case and make much of it. She made a poor witness for herself, there is no doubt about this. We do not regard as important whether she made the statements attributed to her or not, or whether she herself was a finished witness, as the disinterested testimony overwhelmingly establish these facts: That deceased had agreed when they came here to give defendant and her mother what property he had left at his death if they would live with and care for him during his remaining days; that defendant faithfully kept her compact; for 15 years she cared for her uncle; during that time plaintiff never visited him, and but two or three others who are now seeking his property ever came to see him and they only on occasions when they were in the State for other purposes; that the deed was the free

and deliberate act of the deceased untainted by fraud or undue influence.

If the deed was delivered to Mr. Roe as testified to by the attorney who drew it with the written instructions produced on the trial as we believe it was, it was a good delivery in escrow and was not testamentary in character.

But plaintiff's counsel insist that the deed was made to defeat the State of its inheritance tax, that the amount of revenue stamps on it was not sufficient, and that it should be set aside because made with intent to defraud the Federal and State governments. It would be a sufficient answer to this contention to say that no such grounds are stated in the bill as a basis of relief. But we are satisfied that the claim has no foundation in fact. While Mr. McKenzie may have been advised by some layman without knowledge on the subject of taxes, as we have already stated he made this deed pursuant to a fixed purpose, with both a legal and moral obligation resting on him so to do. He did what a normal conscientious man would under like circumstances be expected to do. His nearest relatives were nephews and nieces. All of them neglected him save one; that one gave him 15 years of her life; he appreciated her services in the highest degree; by the execution of this deed he discharged his compact with her and his duty to her. There is nothing upon this record that would justify us in disturbing this deed.

The decree will be affirmed, with costs.

STEERE, C. J., and MOORE, STONE, CLARK, BIRD, and SHARPE, JJ., concurred. WIEST, J., did not sit.