## IN RE WHITMAN'S WILL.

### WHITMAN, Appellant, v. WHITMAN, Respondent.

### (184 N. W. 975.)

(File No. 4620.   Opinion filed November 4, 1921.)

1. **Wills—Mental Incapacity, Undue Influence, Motives of Decedent Considered in Determining.**

   In determining weight to be given the fact that under a will there was what might be deemed an unnatural disposition of decedent's property, Court will consider what appeared to have been controlling motives influencing decedent's action prior to and at time of making will. So held, where evidence showed serious family discord in decedent's family and that he laid blame therefor, in part at least, upon his wife's family, that during his married life he placed title to his realty and also to his moneys in the names of third parties, the greater part in name of his sister (to whom he subsequently willed practically his entire estate), his purpose being to place his property beyond reach of his wife should she seek divorce from him, which she subsequently did.

2. **Same—Undue Influence, Visits by Sister During Divorce Trial, Whether Evidence Of—Mental Incapacity, Obsessed Mind Re Depriving Wife of Estate, Whether Evidence Of—Confidence in Sister, Motive Approved.**

   Evidence that decedent's sister (to whom he afterwards willed practically his entire estate) was visiting him during period of the divorce trial between him and wife and down to execution of his will, and that he so willed his property, fails to establish undue influence as regards mental incapacity; the fact that decedent's mind was obsessed with seeing to it that his former wife and her people acquired no benefits from his estate, is no evidence of such incapacity. So held, where evidence showed it was to carry out such purpose that provisions were insisted in his will devising and bequeathing the whole estate to his sister save $100 bequeathed to his son, the will reciting that he reposed full confidence in the sister, "that she will see that my said son is properly educated and provided for and that she will make such provision for him in her last will as she may deem advisable;" and, decedent having shown absolute confidence in his sister by having during his married life placed the title to the greater part of his entire property in her name, thus empowering her to have deprived him of the property while he was living if so desiring, it must be assumed in absence of evidence to contrary that the sister intends honestly and conscientiously to carry out the provisions of the will, and if (as sugested by one of our colleagues), she should not place title thereto in name of his son, thus em-

powering him during his life or upon his death to confer the estate upon his mother or her people, such act on the sister's part would be an unjustifiable breach of the confidence thus reposed in her.

3.  **Same—Devise to Sister With Expression Re Son's Education and Provision For Him in Devisee's Will, Whether an Enforcible Trust, Not Decided—Change in Will, Powerlessness of Court Re.**

If decedent supposed his will devising practically all of his property to his sister instead of to his wife and relatives and his son, with a recital therein that he reposed full confidence in sister that she would properly educate and provide for the son and make such provision for him in her will as she deemed advisable—created an enforcible trust, while in fact it did not create such trust,—a matter not decided—it is not within Court's province to make a new will to carry out his intent.

4.  **New Trial—Newly Discovered Evidence, Ineffectual to Change the Result, Controlling Facts to Contrary, Effect in Determining Decedent's Mental Capacity.**

Where alleged newly discovered evidence would not, in mind of appellate Court, change result reached upon trial, it is unavailing. So held, in considering evidence of decedent's alleged testamentary incapacity; and where what he did was in exact harmony with course he had pursued for years, the fact that he devised practically his whole property to his sister was not evidence of undue influence by her.

Polley, C. S., and Hughes, Circuit Judge, sitting in place of Justice Gates, dissenting.

Appeal from Circuit Court, Minnehaha County. Hon Louis L. Fleeger, Judge.

In re the Estate of Joseph H. Whitman, deceased; Charles J. Whitman having contested the will after its probate in County Court, he being successful; Alice M. Whitman being proponent thereof. Upon appeal to circuit court the will was sustained; from the judgment sustaining the will, and from an order denying a new trial, contestant Charles J. Whitman appeals. Affirmed.

*G. J. Danforth,* and *E. E. Wagner,* for Appellant.

*Charles P. Bates,* and *Davis, Lyon & Bradford,* for Respondent.

(2)   To point two of the opinion, Appellant cited: Abbott v. Church, 4 A. L. R. 975, 978; Johnson v. Shaver (S. D.) 176 N. W. 677; Garvin's Administrator v. Williams, 44 Mo. 465, 100 Am. Dec. 314.

Respondent cited: Re Spencer, 96 Cal. 448; Alexander on Wills, Sec. 900.

WHITING, J.   One Joseph H. Whitman died testate.   By his will there was bequeathed to his only son, Charles Joseph Whitman, the sum of $100, the remainder of his estate, which was of considerable size, being devised and bequeathed to his sister, Alice Whitman.   The testator stated in said will, in apparent explanation of such disposition, "reposing full confidence in her that she will see that my said son is properly educated and provided for, and that she will make such provision for him in her last will as she may deem advisable."   This will was admitted to probate in the county court of Minnehaha county.   Thereafter a contest was filed by testator's son, and, upon trial in the county court, contestant was successful.   Upon appeal to the circuit court, the will was sustained.   It is from the judgment of the circuit court sustaining such will and from an order denying a new trial that this appeal was taken.

Contestant alleged lack of testamentary capacity and undue influence; such undue influence being charged against the said Alice Whitman.   In support of contestant's allegations he relies largely upon what he contends are unnatural provisions in said will, being the provisions above referred to.

[1]   We find no evidence which would have warranted the the trial court in finding deceased to have been either mentally incompetent to make the will or to have been unduly influenced in its making.   In determining the weight that should be given to the fact that, by the terms of the will, there was what might be deemed an unnatural disposition of decedent's property, we should and do take into consideration what appeared to have been the controlling motives influencing the actions of decedent prior to and up to the time of the making of said will.   The married life of decedent was exceedingly unhappy.   We need not determine the cause of his domestic trouble, as that is immaterial. It is absolutely undisputed that most serious family discord did exist, and that decedent laid the blame therefor, in part at least, upon his wife's family.   Decedent was a very keen and shrewd business man, and he accumulated a large amount of property, largely real estate.   During his married life he placed the title to his real estate and also to his moneys in the names of third par-

ties—the greater part thereof in the name of his sister, Alice Whitman. It appears that the purpose in the mind of decedent was to keep his property in the names of other persons so that his wife would be unable to reach such property in case she should seek to do so in divorce or other proceedings. Divorce proceedings were eventually instituted by decedent's wife. She was granted a divorce and allowed certain alimony that had been agreed upon. It was immediately after the decree in the divorce proceedings, and at a time when his sister was visiting decedent, that decedent executed the will now in question.

[2] The only bases whatsoever for the claim of undue influence are the fact that the sister was visiting decedent during the period of the divorce trial and down to the execution of said will, and the further fact that practically all the property was willed to her. There is absolutely no evidence of mental incapacity on the part of decedent; but it is clear that decedent's mind was obsessed with the purpose to see to it that his former wife and her people acquired no benefit from his estate; and it is also clear that it was to carry out such purpose that the above-mentioned provisions of this will were placed therein. The son remained with testator after the decree of divorce, and testator was very devoted to him. But, when we consider that decedent had shown absolute confidence in his sister by placing it within her power to have deprived him of the larger part of his property while he was living, we find nothing strange or even unnatural in the fact that he continued to repose such confidence in her, or that, in order that he might be assured that his wife and her people should receive no part of his estate, he placed the title to all of his property in his sister, leaving it to her honor to make proper provision for the education and care of such son during her lifetime, and also just provision for him in her will. It has been suggested by one of our Colleagues that, if the sister were honest, she, instead of resisting this contest, would voluntarily release or convey to the son the property covered by the will. It would seem, however, that a moment's consideration would demonstrate the unsoundness of this suggestion. We must assume, in the absence of any evidence to the contrary, that Alice Whitman intends, honestly and conscientiously, to carry out the

2—Vol. 45, S. D.

expressed desires of her brother. If she should now place the title to his estate in the name of his son so that it was within the son's power, either during his lifetime or upon his death, to confer such estate or any part thereof upon his mother or her people, such act on her part would be an unjustifiable breach of the confidence reposed in her by decedent. It is her duty to decedent to uphold the will, so that she will be able to carry out his wishes. Of course, it may be that decedent placed too great confidence in his sister; but no one can urge that it would be the province of a court to set aside the will of a decedent simply because the court was of the opinion that the recipients under the will were unworthy.

[3] No question is raised but that decedent knew the contents of the instrument which he executed. If decedent supposed such instrument created a trust enforceable at law, and it did not create such a trust—a matter we do not decide—it is not within the province of courts to make a new will to carry out his intent.

[4] Contestant seeks a new trial upon the ground of newly discovered evidence; but we find nothing in the newly discovered evidence which to our minds might properly change the result reached upon the trial in the circuit court. There would still be left the controlling facts that there is no evidence showing testamentary incapacity, and that, when we consider that what decedent did through his will was in exact harmony with the course that he had pursued for years, there is nothing, even if the newly discovered evidence had been before the trial court, that would have justified such court in concluding that Alice Whitman exercised any undue influence over the mind of her brother.

The judgment and order appealed from are affirmed.

HUGHES, Circuit Judge, sitting in place of Justice GATES, dissents.

POLLEY, P. J. (dissenting.) I am unable to concur in the majority opinion. There is no question that the testator desired that his son should have his property, and that when about to make his will he directed his attorney to so frame the will that his son would get all his property; but he was laboring under such a state of mental perturbation, and was so obsessed with the one idea of placing his property beyond the reach of the Burroughs family, that he failed to appreciate the fact that the

will was so framed as to place the property not only beyond the reach of the Burroughs family, but beyond the reach of his son as well. 'A careful reading of the testimony touching the conduct of the proponent just before and at the time of the execution of the will can leave no doubt that she either dictated the will or that she influenced the testator in the framing of the will, and that he executed it under the belief that he was leaving his property to the proponent in trust for his son.

The judgment ought to be reversed, and the will canceled.