TOBIN et al, Appellants, v. NORDNESS, Respondent.

(197 N. W. 783.)

(File No. 5379.   Opinion filed March 7, 1924.)

1. **Wills—Evidence—Will Not Offered for Probate Held Relevant on Appeal Only as to Testamentary Capacity or Undue Influence.**

In a will contest, a will not offered for probate, which was found in testatrix's trunk after the probated will was taken by the executor from a safety deposit box, held to have no place in the record upon appeal, except as relevant to an issue of testamentary capacity and undue influence.

2. **Wills—Decedents—Olographic Will Found in Safety Deposit Box with Valuable Securities Properly Admitted to Probate.**

The court did not err in admitting to probate an olographic will found by testatrix's banker and executor in her steel safety deposit box to which testatrix had the key, the box containing also certificates of deposit and Liberty bonds aggregating $10,000 and other securities, notwithstanding another will found in her trunk at home.

3. **Wills—Evidence—Undue Influence—Evidence Held Insufficient to Show Undue Influence of Testatrix's Sister as Against Brother.**

In a will contest case, evidence tending to show undue influence of testatrix's sister held insufficient, where contestant brother had equal opportunity to exercise influence, and no evidence was produced tending to show testatrix's desire to change her will after it was deposited with her bank.

4. **Wills—Verdict—Appeal and Error—Verdict Held Properly Directed for Proponent in Will Contest.**

In a will contest, verdict held properly directed sustaining the will on the issues of testamentary capacity and undue influence.

Appeal from Circuit Court, Day County; HON. B. A. WALTON, Judge.

Petition by L. L. Nordness as executor for the probate of the will of Eliza Tobin, deceased. From a judgment admitting the will to probate and an order denying a new trial, contestants Charles Tobin and others appeal. Affirmed.

*S. P. Skahen* and *D. W. George,* both of Minneapolis, Minn., and *Woodworth & Coomes,* of Webster, for Appellants.

*C. B. Halls, Lewis W. Bicknell,* and *Waddel & Dougherty,* all of Webster, for Respondent.

GATES, J. One Eliza Tobin, about 60 years of age, died in Day county March 3, 1922, leaving as her sole heirs at law her brothers and sisters. She left an olographic will by which her sisters Jane and Retta and her brother James were given $5 each, and the remainder was given to her brother Charles and her sister Sophia, except that certain real estate was given to Charles for life only, with directions for sale after his death, the proceeds to be divided among her nephews and nieces then living. Upon the hearing of the executor's petition for the probate of the will in county court the brothers Charles and James and the sisters Jane and Retta contested the admission of the will to probate. So far as here material the grounds of contest were lack of testamentary capacity and undue influence. The county court admitted the will to probate. Upon appeal by the contestants the matter was tried in the circuit court with the result that the trial court directed a verdict in support of the will. The contestants appeal from the judgment and an order denying a new trial.

[1-4] The will was dated September 15, 1921. On February 7, 1922 (or nearly a month before her death) testatrix sent to her bank a steel safety deposit box which she had kept at home for 10 or 12 months. This was taken to the bank by her brother Charles, accompanied by Sophia's husband and Novak, an employee. She retained the key. Upon her death the banker her executor, the respondent herein, opened the box, and in it was found the will contained in a sealed envelope marked in testatrix's handwriting "Eliza Tobin's Last Will." In the box were also found certificates of deposit and Liberty bonds aggregating about $10,000; certificates of stock in a farmers' elevator company and in a telephone company; some diamond rings; a brooch; some gold coin; a watch and deeds and papers pertaining to her father's estate. The will was taken to the county judge and by him opened.

Later, and at the time of the hearing in county court, another olographic will bearing the same date was found in a trunk in the home of deceased. This was offered in evidence by contestants. It was not claimed by them that this was testatrix's last will. The only difference between the two is that in the one later found the $5 bequests to Jane, Retta, and James were omitted, and Charles received $2,725 less and Sophia $2,725 more than in the will that was admitted to probate. There was no proof showing when either was in fact executed, except of course, that the one admitted to probate must have been executed prior to February 7, 1922. There was evidence tending to show that neither could have been executed on September 15, 1921, because of testatrix's bedridden condition from September 11 to September 16. The will later found was not offered for probate, and it has no place in the record upon this appeal, except as it is relevant to the issues of testamentary capacity and undue influence. Upon the latter issue it strongly negatives the effective exercise of undue influence over testatrix by Sophia as between the two wills. From the place in which the will admitted to probate was found it is clear that the county court and the circuit court did not err in determining that it was testatrix's last will.

The evidence produced at the trial clearly showed the competency of testatrix to make a will. There was nothing shown that even arose to the dignity of evidence to the contrary. The most that can be said is that eccentricities were shown, but none that tended to affect her testamentary capacity. The evidence was so clear that a verdict to the contrary would necessarily have been set aside. Therefore the court did not err in directing a verdict on that issue.

It is contended that Sophia exercised undue influence over testatrix in the making of the will. In support of this contention evidence was offered tending to show that in 1920 testatrix had declared that Charles was to have the home farm. There was no evidence that testatrix ever manifested an intention of leaving any portion of her property to either Jane, Retta, or James. Testarix died seized of three adjacent quarter sections. One of these was homesteaded by testatrix on which were two houses. Testatrix lived in the new house, and Charles and his wife in the old one. One of these quarters was bought by testatrix 4 or 5 years

after her homestead entry, and the third was bought by her from her father 9 or 10 years previous to the trial. Charles managed the farm. By the will Charles was left a life estate in one of these quarter sections and an adjoining "80." He was also given in fee her one-fifth interest in a quarter section in Day county and half of her one-fifth interest in a quarter section in Colfax county, Neb., and the house in which he lived situated on the land given to Sophia. Sophia was given the homestead quarter (except the old house), an adjoining "80,"; half of her one-fifth interest in the Nebraska land; all of her one-fifth interest in a quarter section in North Dakota; and her one-fifth interest in three lots in Macomb, Ill.

Charles' wife testified to conversations with testatrix, in which testatrix said Charles was to have the home farm, but the clear purport of her testimony is that such declarations referred only to the homestead quarter. The witness also testified to a conversation with testatrix in July, 1921, in which testatrix said that Sophia had been "knocking" her brothers and sisters, and was trying to get her property to the exclusion of Charles, but that her will was made, and it was going to stand as it was, and that nobody would change her mind. The witness also testified to another conversation relating to the disposition of testatrix's property, in which testatrix told witness that Charles would never be sorry; that she expected to give him the farm she was then living on. Fanny Novak, a sister of Charles' wife, testified that between October and February testatrix said she was going to give the big house to Charles, and that she did not think she would give much to Sophia. Mr. Perry testified that in 1920 testatrix said, "I want all of this to go in a chunk to Charles when I am through with it." Dolly Rowe, a niece of Charles' wife, testified that in the summer of 1921 testatrix said that Charles would soon own the place she was living on.

Sophia resided at Harvey, N. D., but had been a frequent visitor at testatrix's home. James resided at Langford, Jane at Andover, and Retta at Waterloo, Iowa. It was shown that during the last two years of testatrix's life Sophia was frequently in position to have exercised an influence over testatrix, but no more than were Charles and his wife. It appeared from the evidence that in September, 1920, in the presence of testatrix Sophia

"bragged" that she could make Eliza do anything she wanted her to do. The employee, Novak, husband of a sister of Charles' wife, testified that on the evening of February 6, 1922, the night before the steel box was taken to the bank, he saw testatrix and Sophia sitting at the kitchen table with some papers in front of them, and that on one paper he saw the heading, "In the Name of God, Amen"; that testatrix started to say something, but Sophia told her to keep quiet, and covered up the papers. Sophia left for her home on February 9, but was recalled on February 21, and remained until testatrix's death. There is no evidence tending to show a desire on testatrix's part to change her will after it was taken to the bank.

After carefully scrutinizing the evidence, we are of the opinion that this case is within the rule announced in Gillette v. McLaughlin, 44 S. D. 499, 184 N. W. 277, wherein we said:

"That they had an opportunity to talk with him and possibly to influence him cannot be questioned, but opportunity alone, or opportunity together with the fact that they were provided for in the will, does not amount to legal proof that they were instrumental in bringing about the disposition made of his property. McKenzie v. Murray, 183 N. W. 736."

We fail to find any substantial evidence that Sophia exercised an undue influence over testatrix in the making of her will. We are satisfied that the trial court did not err in believing that the will exactly expressed the wishes and intentions of the testatrix. As upon the other issue of testamentary capacity, if the case had gone to the jury and a verdict had been returned contrary to the validity of the will, the trial court would have been justified in setting aside the verdict. Therefore there was no error in directing it.

Certain alleged errors in rulings on evidence are argued, but we find nothing of a prejudicial nature.

The judgment and order appealed from are affirmed.

Note.—Reported in 197 N. W. 783. See, Headnote, American Key-Numbered Digest, (1) Wills, Key-No. 370, 40 Cyc. 1353; (2) Wills, Key-No. 135, 40 Cyc. 1132; (3) Wills, Key-No. 166(7), 40 Cyc. 1165; (4) Wills, Key-No. 327, 40 Cyc. 1333.

On effect of delay in probating will, generally, see note in 57 L. R. A. 253; specifically, as where the will is concealed, lost or destroyed, see page 258 of above note.