ANDERSON *v.* T. G. OWEN AND SON, INC.

No. 40536          October 14, 1957          97 So. 2d 369

*Satterfield, Shell, Williams & Buford,* Jackson, for appellant.

*Robert D. Patterson,* Aberdeen; *Dudley R. Carr,* Tupelo; *D. W. Houston, Jr.,* Aberdeen; *John W. Holloman,* Columbus, for appellees.

Lee, J.

Mrs. Cora James Anderson, by her bill of complaint against T. G. Owen and Son, Inc., and others, sought to cancel all claims of the defendants to an undivided one-half interest in the oil, gas and other minerals in and under the land described in the bill, comprising in excess of eight hundred acres. These adverse claims stemmed from the sale of her one-half interest under execution. Complainant charged that the sale was invalid because (1) at the time, the judgment lien had been released; or, in the alternative (2) Dalton, the purchaser, was a tenant in common with her of the mineral estate; or (3) the consideration of $16 was grossly inadequate.

The answers of the defendants, which were also made cross bills, denied all of the material allegations of the original and amended bills, and sought the cancellation of the claims of the complainant and cross-defendant.

At the conclusion of the hearing, the court dismissed the original and amended bills, and granted the relief prayed for in the cross bills. From the final decree entered, Mrs. Anderson appealed.

The salient facts in the record were as follows: On March 8, 1932, Armour Fertilizer Works and J. C. Crosby, Administrator, obtained a judgment against L. B. and Cora James Anderson in the sum of $984.53, and the same was enrolled on the judgment roll of Monroe County on March 26, 1932.

On June 13, 1932, J. E. Brown, the then owner of the land in controversy, by special warranty deed, conveyed the same to Cora James Anderson.

On August 17, 1932, L. B. and Cora J. Anderson, by special warranty deed, conveyed the land to Philip H. Dalton, making the following exception thereto: "The said L. B. Anderson and wife Cora James Anderson retains a one half interest in all the oil and mineral rights in the above described tracts or parcels of land herein described."

Philip H. Dalton, several years after his purchase from the Andersons, had his title checked, when it was found that his land was subject to the aforementioned judgment lien. For the sum of $150, he procured a release as follows: "For value received, we release from the operation of the lien hereof the land described in the deed from L. B. and Mrs. Cora James Anderson to Philip H. Dalton dated August 17, 1932, and recorded in Deed Book 99 at Page 471. This Oct. 14, 1936.

"Leftwich & Tubb, Attorneys
of record for the plaintiff
"Attest:
"S. D. Ritter
"Circuit Clerk."

On September 29, 1937, an execution was issued on the original judgment, and, pursuant to a levy, the interests of the defendants, L. B. and Cora James Anderson, in the lands, namely, one-half of the oil and mineral rights therein, were sold to Philip H. Dalton for a consideration of $16, and deed therefor of date of October 25, 1937, was executed and delivered by the sheriff.

Applicant contends that the release of date of October 14, 1936, supra, operated as a satisfaction of the judgment, and that until such entry had been vacated, no execution could be issued thereon; and that the sale of date of October 25, 1937, was therefore a nullity. She

cites 49 C. J. S., Judgments, Section 583, p. 1066, in part as follows: "A satisfaction of a judgment, entered of record by the act of the parties, is prima facie evidence that the creditor has received payment of the amount of the judgment or its equivalent, and operates as an extinguishment of the debt and a bar to further proceedings which continue on the theory that the judgment remains a subsisting obligation, except where the satisfaction was procured by fraud or duress, or without consideration, or on a condition which has not been performed, or was entered by the clerk without authority to do so. Thus, unless the case comes within such exceptions, no action lies on a satisfied judgment, and no further execution may issue, even with the consent of the parties, until the satisfaction is vacated and a new execution awarded by an order of the court in which the judgment was rendered, it has been held that the entry cannot be impeached or inquired into collaterally." She also cites Section 584 thereof to show that either a court of law or equity may entertain an application to vacate the entry of the satisfaction.

When it is kept in mind that the Andersons, in their deed to Dalton, retained one-half of the oil and mineral rights, it is obvious that such rights were not conveyed and that Dalton received title only to the surface and one-half of the oil and minerals. Beyond question, the purpose of the instrument, which he obtained in 1936, was to release the property which had been conveyed by the Andersons in their deed. But, since they retained one-half of the oil and mineral rights, clearly the instrument in no way released their one-half.

If the instrument had been intended as a satisfaction or cancellation of the judgment lien, it should have so stated. On the contrary, it purported only to release therefrom "the land described in the deed from L. B. and Mrs. Cora James Anderson to Philip H. Dalton" as

identified. Clearly the purpose was to release from the judgment lien such property as Dalton acquired by their conveyance to him, namely the surface and one-half of the oil and mineral rights. It did not release the oil and mineral rights which had been retained by the Andersons. Being neither a cancellation nor a satisfaction, the rule relied on by the appellant has no application.

Appellant contends that she and Dalton were cotenants insofar as the oil and minerals were concerned, and that he had no legal right to purchase her interest, and that even if he did so, it inured to her benefit under the rule that a confidential relationship existed between them and it would be inequitable to permit him to buy an outstanding adversary title and claim it for his exclusive benefit.

But in this case the judgment was against Mrs. Anderson. The debt on which it was based was incurred by Mrs. Anderson and her husband. Dalton had no part in contracting it, and was under no obligation to pay it. Although he had a deed from the Andersons, actually he was compelled to pay $150 in order to get the land, which they had sold him, released from the judgment lien. The bill alleged that appellant did not even know that the sale had occurred until 1952, and her suit was not filed until 1954. The facts indicate that she was wholly unconcerned as to what happened to Dalton in respect to the judgment lien which attached by reason of her indebtedness. It would be an anomalous situation indeed if, under such circumstances, Dalton could not purchase this interest at the execution sale, or, if he did do so, his purchase would inure to the benefit of those who had misused him so badly. The law is not that unjust or inequitable. Applicable here is the principle found in 14 Am. Jur., Cotenancy, Section 50, pp. 119-120, which reads in part as follows: "In accordance with the principles stated in a subsequent section concerning the right of cotenants to deal with each other,

*the courts are agreed that when the common property is sold for the satisfaction of a debt payable by only one of the tenants, his cotenant or cotenants may purchase the title in the same manner as may a stranger."* (Emphasis supplied) See also 86 C. J. S., Tenancy in Common, Section 60a, p. 427, where it is said: "A tenant in common may purchase the interests of his cotenants at a partition, execution, or other judicial sale of such interests, and acquire their rights for his sole benefit, where the judgment or lien on which the sale was had was only on the undivided share of his cotenant, and particularly where it was not obtained by the purchaser. In such case the purchaser will not be charged as a trustee for his cotenant." See also 54 A. L. R. 905-6. ██ ██ Thus Dalton had the right to purchase for his own interest.

██ ██ Appellant also contends that, even if the interest of Mrs. Anderson was subject to the execution and to the purchase by Dalton, still the attempted sale was null and void because of the total inadequacy of the consideration. Among the cases which she cites are Reynolds v. Nye, Freeman Chancery Reports, p. 462, and Bratton v. Graham, 146 Miss. 246, 111 So. 353. In the former, there was an execution sale to realize a balance of $11.66 and costs on a judgment, and property worth between $5,000 and $8,000 brought only $10. In the latter, the property at the execution sale brought only one twentieth to one-fiftieth of its value. In the former case, because of the gross inadequacy and the fact that the judgment creditor had procured the sale, and, in the latter case, because of the unconscionable amount of the consideration, the sales were set aside.

In the case here, Hon. Frank S. Leftwich, an attorney, who claimed to have been familiar with this land and the value of oil and mineral rights generally at the time of the sale, testified that this acreage was in a block on which a dry hole was drilled in 1927; that the con-

sideration for leases had been nominal; that there was no demand for oil or mineral rights, and that they were of little, if any, value whatever; and that, in his opinion, $16, the amount bid at the sale, was not so inadequate as to be unconscionable. This was the only witness who testified on this subject-matter. The appellant did not offer a word of affirmative proof to show what such rights were worth, or that their value was greatly in excess of the amount paid. The court does not intend to adjudicate that four hundred mineral acres in 1937 were worth only $16. If the consideration was wholly inadequate, it does seem that the appellant could have offered proof to that effect. There is no factual basis on which to say that the chancellor, in refusing to set aside the sale on the ground of total inadequacy of consideration, was manifestly wrong.

From which it follows that the decree of the trial court must be, and is, affirmed.

Affirmed.

*Roberds, P. J.,* and *Arrington, Ethridge* and *Gillespie, JJ.,* concur.