WEXLER, Respondent v. WEXLER et al., Appellants

(114 N.W.2d 886)

(File No. 9940. Opinion filed May 9, 1962)

**O. E. Beardsley**, Watertown, guardian ad litem of Appellant, Norman Wexler.

**Austin, Hinderaker & Hackett**, Watertown, for Respondent, Bessie Wexler.

HANSON, J.   In this action to quiet title Norman Wexler, an incompetent, is the only contesting defendant. He was formerly married to the plaintiff, Bessie Wexler, and this action is a sequel to protracted divorce proceedings involving the same parties and the same property. O. E. Beardsley, Guardian Ad Litem for defendant, appeals from the judgment quieting title in plaintiff.

The property involved is situated in a commercial area of the City of Watertown. It has been in the Wexler family for a number of years whereon the Wexler Auto Wrecking Company operated a junk and used auto parts business. Norman Wexler was a partner in the business prior to 1947. In 1947 he received the remaining interest in the property by inheritance and continued operating the business by himself.

In 1951 plaintiff and defendant were unable to continue living together as husband and wife and Bessie started an action for divorce. There were two minor children and defendant was ordered to pay plaintiff $35 per week temporary alimony. Bessie moved to Chicago with the minor children and thereafter except for small

amounts paid by Norman, was dependent upon relatives for support.

On September 2, 1953 the parties entered into a property settlement and child custody agreement the terms of which were incorporated into the Decree of Divorce entered on March 15, 1954. By virtue thereof (1) plaintiff obtained an undivided one-half interest in the Wexler commercial property, (2) a portion of the property was leased to the Continental Oil Company on a long term lease and another portion similarly leased to Red Owl Stores, Inc., (3) the premises were mortgaged to the Midland National Life Insurance Company for over $34,000 and the rentals from Red Owl and Continental Oil were assigned to Midland to be applied on the mortgaged indebtedness, (4) plaintiff leased to defendant her half interest in the portion of the property used by him in his junk business for $5 per week plus payment of all taxes, assessments, and insurance, (5) past due support and alimony in the amount of $2,161.04 was impressed as a lien in favor of plaintiff against defendant's interest in the property, and defendant was ordered to pay plaintiff $5 per week on the same, (6) defendant was further ordered to pay plaintiff $15 per week for the support of the minor children, and (7) defendant assigned to plaintiff the first $125 rentals per month from the whole of said property which might be derived from any of the unobligated portions of said property.

Further orders were entered in the divorce proceeding, one dated April 9, 1957, creating a lien in favor of plaintiff in the amount of $1,220 against defendant's interest in the property and another, dated May 16, 1957, creating a similar lien in the amount of $960. Also after the divorce the following additional liens and judgments accumulated against defendant's interest:

(1) May 1, 1954 mortgage to Winfield L. Coykendall in the amount of $295.77.

(2) May 15, 1954 mortgage to Herman and Anna Evenson in the amount of $1888.

(3) April 29, 1954 judgment in favor of Credit Management Service Co. for $293.27.

(4) July 19, 1954 judgment filed in favor of Oscar Nygaard in the amount of $331.01.

(5) January 10, 1955 judgment was taken by Aaron Ferer & Sons Co. in the amount of $520.23.

(6) January 14, 1955 judgment was entered in favor of M & S Auto Parts Co., in the amount of $267.75.

(7) April 2, 1956 judgment filed in favor of Murphy Finance Co. in the amount of $358.30.

(8) February 25, 1957 judgment entered in favor of the Brown Clinic for $550.

(9) March 30, 1957 judgment filed in favor of Bradfelt Inc. in the amount of $16.38 plus costs.

(10) April 18, 1957 judgment entered in favor of Wallace Spicer, an employee of defendants, in the amount of $515.

(11) Personal property taxes from 1954 through 1957 totaling $146.39.

(12) County liens for care of Norman in State Hospital from October 8, 1957 to October 16, 1958 and succeeding liens accumulating at the rate of $35 per month.

(13) Federal tax lien, dated October 8, 1957, in the amount of $94.86.

In addition defendant was indebted to Fred Tederman on a note for $3000 and to Jacob Brevik on a note for $625 together with accruals of interest on all secured and unsecured obligations.

Execution on the Aaron Ferer & Sons judgment was issued on July 1, 1957 and a sale followed. A Certificate of Sale was issued on July 29, 1957 which was purchased by plaintiff without defendant's knowledge. The Sheriff's Deed was issued to plaintiff on July 31, 1958 by virtue of which

she claims title to defendant's one-half interest in the property.

During 1958 plaintiff also purchased, agreed to pay, or obtained an assignment of nearly all the other mortgages, liens, and judgments against defendant's interest in said property. These liens for the most part, were obtained by plaintiff at some discount. The only judgments plaintiff did not purchase were those held by the Murphy Finance Co. and Wallace Spicer. Both defaulted in this action, however.

In substance, defendant contends that plaintiff is not entitled to relief in a court of equity because (1) he has been mentally incompetent to handle his affairs since 1951 which fact was well known to plaintiff, (2) the parties were cotenants, and (3) plaintiff took unconscionable advantage of this relationship and of his mental and financial condition in acquiring his interest in the property through divorce proceedings and by secret acquisitions of the other liens and judgments. Therefore, he requests the property be ordered sold by a Referee or Receiver and the proceeds evenly divided between the parties.

Defendant's contentions require further reference to the facts. It appears therefrom that defendant has been afflicted with a form of epilepsy for many years which resulted in gradual mental deterioration. On September 16, 1957 he was committed to the State Hospital for the Insane. In the opinion of Dr. H. Russell Brown defendant was mentally incompetent in May 1951 at which time he recommended institutional care. Apparently at the time defendant would not follow directions with reference to medical care and medications. Dr. Brown, however, did not treat, or professionally observe, defendant from 1951 to the time of his commitment in 1957. Further evidence of defendant's mental incompetence was indicated by the testimony of an attorney and two other lay witnesses. On the other hand this chronic condition did not prevent defendant from: attending high school; marriage; operating a business up

to the time of his commitment to the State Hospital; taking an active part in the many legal proceedings in which he was involved; and otherwise leading a useful life.

█ █ As the court observed in the case of In re Derusseau's Will, 175 Wis. 140, 184 N.W. 705, 16 A.L.R. 1412, "If it were not for the testimony that the deceased had suffered from epilepsy since childhood, the facts in this case would call for very little discussion." The court went on to say that "Neither insanity nor testamentary incapacity can be presumed from the fact that a testator has long suffered from epilepsy. It is true that such a condition may be an important fact, in connection with other facts in the determination of the question; but it is a matter of common knowledge that many persons have long been the victims of this dread disease, and yet possessed in the intervals between attacks a high degree of mental power".

█ █ Accordingly, we are unable to conclude the evidence preponderates against the court's finding on mental competency. This court indicated in the case of In re Knott's Guardianship, 71 S.D. 53, 21 N.W.2d 59, that an issue of mental competency must ordinarily be left to the sound discretion and judgment of the trial court and quoted with approval from the case of In re Strom's Guardianship, 205 Minn. 399, 286 N.W. 245, as follows: "It has the advantage, not possessed here, of being confronted with the witnesses, the alleged incompetent person, and the circumstances surrounding the entire proceeding. It is more capable than we of reaching a clear understanding of the situation and of the mental condition and capacity of the claimed incompetent person."

█ The parties became cotenants in the property by virtue of the divorce decree. Each thereafter owned an undivided one-half interest. Each was obligated to pro-

tect their common title and by reason of the confidential relationship existing between cotenants the courts agree "that it would ordinarily be inequitable to permit one, without the consent of the others, to buy in an outstanding adversary title or claim and assert it for his exclusive benefit; and when such a transaction comes before them, they will usually regard the purchasing tenant as holding the title or claim so acquired for the benefit of his cotenants * * *." 14 Am.Jur., Cotenancy, § 51, p. 120.

█ █ In this case, however, the Aaron Ferer & Sons judgment was an obligation incurred by defendant and constituted a lien against only his interest in the property. Plaintiff did not incur the indebtedness and was not obligated to pay the same. In the absence of fraud, wrongdoing, or overreaching she was free to acquire the interest of her cotenant. The applicable rule is stated in 14 Am. Jur., Cotenancy, § 50, p. 119 as follows: "In accordance with the principles stated in a subsequent section concerning the right of cotenants to deal with each other, the courts are agreed that when the common property is sold for the satisfaction of a debt payable by only one of the tenants, his cotenant or cotenants may purchase the title in the same manner as may a stranger." The same principle is expressed in 86 C.J.S. Tenancy in Common § 60, p. 427: "A tenant in common may purchase the interests of his cotenants at a partition, execution, or other judicial sale of such interests, and acquire their rights for his sole benefit, where the judgment or lien on which the sale was had was only on the undivided share of his cotenant, and particularly where it was not obtained by the purchaser. In such case the purchaser will not be charged as a trustee for his cotenant." See also Anderson v. T. G. Owen and Son, Inc., 231 Miss. 633, 97 So.2d 369 and Givens v. Moulton, 264 Ala. 417, 87 So.2d 839.

The trial court found the whole property worth $68,500 on July 31, 1958 when plaintiff acquired title to defendant's interest by Sheriff's Deed. Defendant's half interest was then subject to mortgages and liens in the aggre-

gate amount of $26,386.41 including accrued interest. Defendant owed other creditors in excess of $3,000 which were also potential liens. If plaintiff had effected a redemption from the Aaron Ferer & Sons judgment, in order to protect her lien, she would have been obligated to pay all of the other superior mortgages, liens, and judgments of record. To grant defendant's prayer for relief would require the nullification of prior final court adjudications in all of which defendant appeared and was represented by competent counsel. It would, in effect, require unraveling the whole fabric of his unfortunate life. Such is beyond the power and capacity of any court of equity. Under the circumstances, it is impossible to conclude that plaintiff took any unconscionable advantage of defendant in the acquisition of his heavily encumbered half-interest in the property.

The judgment appealed from is accordingly affirmed and the matter remanded to the circuit court for the purpose of determining and allowing the Guardian Ad Litem a reasonable fee together with the costs and expenses incurred by him on appeal.

All the Judges concur.