In the Matter of the Estate of Donald LINNELL, Deceased.

Nos. 15101, 15220.

Supreme Court of South Dakota.

Argued April 21, 1986.

Decided June 4, 1986.

Rick Johnson of Johnson, Eklund & Davis, Gregory, for appellant Sampson.

Robert L. Chavis, Yankton, for appellants Eugene and Lee Linnell.

Richard D. Hagerty, Yankton, for appellee Troxell.

HENDERSON, Justice.

## ACTION

This case involves two appeals. The first and main appeal is by Edith Sampson (Edith). Edith appeals a Judgment admitting to probate the Will of her brother, Donald Linnell (Donald). Edith contends (1) Donald was not competent to execute a will and (2) that the Will was procured by undue influence. Lee and Eugene Linnell, adopted sons of Donald's deceased brother, file a second appeal from an Order dismissing them from the action contesting the Will. We affirm.

## FACTS

Donald and his wife Ilene, hereinafter referred to as the Linnells, lived and farmed near Lake Andes, South Dakota. Ilene had one sister, Mavis Troxell (Mavis). Mavis lived in the nearby town of Wagner and had two children, Noble and Karen. Although the Linnells were childless, Ilene loved children. A close relationship existed between the Linnells and Mavis and her family. Often, they visited and spent holidays together. When younger, Noble and Karen spent a great amount of time at the Linnell farm. After they attained adulthood and left the Wagner area, Ilene kept track of their whereabouts.

It appears that over a span of years, the Linnells were not close to Donald's sister Edith. Edith lived some distance from the Wagner-Lake Andes area. Visits and contacts were infrequent. The record suggests that some hard feelings existed between Donald and Edith because Edith had filed suit against their brother concerning family heirlooms.

On March 5, 1971, the Linnells executed a Joint Will. Under the terms of this Joint Will, the primary beneficiaries were Mavis' children, Noble and Karen. Previously, in 1966, Donald was diagnosed as having Parkinson's disease.

In the early 1970's, Donald retired from active farming. Although the Linnells continued to live on the farmstead, they leased their farmland. In January 1979, Ilene was diagnosed as having cancer. Ilene received treatments at a Sioux Falls hospital. During the first several months of 1979, the Linnells stayed with Edith in nearby Corson, South Dakota. Eventually, the Linnells went back to their farmstead but returned to Edith's that summer as Ilene required further treatment. During these stays with Edith, Edith cared for and attended to the Linnells' needs. On Labor Day 1979, Edith and her husband drove the Linnells back to the latter's farmstead near Lake Andes.

On September 24, 1979, Ilene was hospitalized at the Wagner Hospital. During this hospital stay, Donald stayed at Mavis' residence in Wagner and drove himself to and from the hospital and the farm. On October 2, 1979, the Linnells contacted Attorney Owen Wipf concerning guardianships. It appears that the Linnells wanted to nominate Mavis as their individual guardians in the eventuality of being unable to care for themselves or their property. Donald informed Attorney Wipf that he was nominating a guardian so as to insure that Edith had nothing to do with his property. That same day, Mavis contacted Attorney Wipf and inquired about the duties and responsibilities of a guardian.

On October 5, 1979, Attorney Wipf took two Nominations for Guardianship, one for Donald and one for Ilene, to the Wagner Hospital. These documents were explained, reviewed, and then executed by the Linnells. Attorney Wipf was then asked to prepare a new joint will for them. Donald provided Attorney Wipf with a copy of

their 1971 Joint Will. Various discussions ensued. Attorney Wipf thereupon prepared a new joint will and returned to the Wagner Hospital that same day, on October 5, 1979. After the Linnells examined the Joint Will, Attorney Wipf read it aloud. The Linnells then executed the Joint Will. Attorney Wipf and Noel Troxell, Mavis' husband, attested the same. As in the 1971 Joint Will, the primary beneficiaries of this Joint Will were Mavis' children, Noble and Karen.

On October 7, 1979, the Linnells were transported to Sioux Falls for Ilene's monthly treatments. While in the Sioux Falls area, they stayed with Edith in Corson. Thereafter, the Linnells returned to their farmstead. Ilene died on December 30, 1979.

After Ilene's funeral, Donald returned to Corson and stayed with Edith for several weeks. In late January 1980, Donald entered a Lake Andes nursing home and resided there until his death in September 1983.

Mavis, as executrix, offered the 1979 Joint Will for probate and Edith contested its admission. As stated above, Edith contends that Donald (1) was not competent to execute a will and (2) that it was procured by undue influence. The adopted sons of Donald's and Edith's deceased brother, Lee and Eugene Linnell, also contested admission.

Trial was held in July 1984, and the trial court by formal decision resolved the issues against Edith. By separate Order, the trial court also dismissed Lee and Eugene Linnell from the will contest because they were not interested persons in Donald's estate. *See In re Estate of Edwards*, 273 N.W.2d 118, 119–20 (S.D.1978); and *In re Eddins' Estate*, 66 S.D. ·109, 110–12, 279 N.W. 244, 245–46 (1938).

From this Judgment, Edith now appeals and from this Order, Lee and Eugene now appeal. We have consolidated these appeals by our Order of March 3, 1986.

## DECISION

### I.

WAS DONALD COMPETENT TO EXECUTE A WILL ON OCTOBER 5, 1979? THE TRIAL COURT FOUND THAT HE WAS. WE DETERMINE THAT THIS FINDING IS NOT CLEARLY ERRONEOUS.

When reviewing the trial court's findings concerning testamentary capacity, we give due regard to the trial court's opportunity to judge the witnesses' credibility and we will not set aside its findings of fact unless clearly erroneous. *In re Estate of Hastings*, 347 N.W.2d 347, 351 (S.D.1984). Under the clearly erroneous standard, the question for this Court is not whether we would have made the same findings that the trial court did, but, whether on the entire evidence, we are left with a definite and firm conviction that a mistake has been committed. *In re Estate of Hobelsberger*, 85 S.D. 282, 289, 181 N.W.2d 455, 459 (1970). That this Court "may have found the facts differently had we heard the testimony is no warrant for us to substitute our judgment for the trial court's carefully considered findings." *Hastings*, 347 N.W.2d at 351.

Any person over 18 years of age and of sound mind may execute a will. SDCL 29-2-3. One has sound mind, for the purposes of making a will, if, without prompting, he is able "to comprehend the nature and extent of his property, the persons who are the natural objects of his bounty and the disposition that he desires to make of such property." *In re Estate of Podgursky*, 271 N.W.2d 52, 55 (S.D.1978). Soundness of mind, for the purpose of executing a will, does not mean "that degree of intellectual vigor which one has in youth or that is usually enjoyed by one in perfect health." *Petterson v. Imbsen*, 46 S.D. 540, 546, 194 N.W. 842, 844 (1923). Mere physical weakness is not determinative of the soundness of mind, *In re Estate of Anders*, 88 S.D. 631, 636, 226 N.W.2d 170, 173 (1975); and it is not necessary that a person desiring to make a will "should have

sufficient capacity to make contracts and do business generally nor to engage in complex and intricate business matters...." *Petterson*, 46 S.D. at 546, 194 N.W. at 844.

Our review of the record satisfies us that the trial court correctly applied the above-cited principles of law, that it did not err in finding that Donald had sufficient testamentary capacity, and that Mavis, as proponent of the will, bore her burden of establishing Donald's testamentary capacity. *In re Estate of Melcher*, 89 S.D. 253, 257, 232 N.W.2d 442, 444 (1975).

■ Attorney Wipf testified that on October 5, 1979, Donald was oriented as to time and place, who he was, where he was, who his heirs were at that time, and the extent of his property and how it was held. Attorney Wipf testified that Donald knew all the above without prompting and that in his opinion, Donald was competent to make a will. Attorney Wipf had been the Linnells' attorney for some five years and the trial court understandably gave Attorney Wipf's testimony considerable weight and was justified in doing so. *In re Estate of Fleege*, 89 S.D. 137, 141, 230 N.W.2d 230, 233 (1975). The 1979 Joint Will, drawn by Attorney Wipf, was substantially similar to the 1971 Joint Will, and Donald's testamentary capacity in 1971 is not disputed or questioned. The 1971 Joint Will is relevant to the issue of testamentary capacity, *Tobin v. Nordness*, 47 S.D. 255, 257, 197 N.W. 783, 784 (1924), and the two Joint Wills establish that Donald had a constant and abiding scheme for the distribution of his property and thus refute the contention of lack of testamentary capacity. *Pollock v. Pollock*, 328 Ill. 179, 183, 159 N.E. 305, 309 (1927). *See also, Heseman v. Vogt*, 181 Ill. 400, 55 N.E. 151 (1899); *Storbeck v. Fridley*, 240 Iowa 879, 38 N.W.2d 163 (1949); *In re Estate of Brink*, 11 Mich.App. 413, 161 N.W.2d 438 (1968); *In re Forsythe's Estate*, 221 Minn. 303, 22 N.W.2d 19 (1946); *In re Estate of Camin*, 212 Neb. 490, 323 N.W.2d 827 (1982); and *In re Dunn*, 184 A.D. 386, 171 N.Y.S. 1056 (1918).

A registered nurse at Wagner Hospital testified that Donald was oriented at all times during Ilene's stay there and the evidence further shows that Donald drove himself to and from the Wagner Hospital. Additionally, on October 7, 1979, when the Linnells were being taken to Sioux Falls for Ilene's monthly treatments, Donald engaged in conversations, was alert, and oriented.

Other evidence of Donald's competence was presented, and although evidence to the contrary was also presented, we are not left with a definite and firm conviction that a mistake has been made.

Edith places great importance upon the fact that on October 5, 1979, Donald executed a Nomination for Guardianship which stated that Donald's physical and mental condition was such that he felt a guardian should be appointed. However, this Nomination was completed so that if a guardian was needed in the future, Donald would have already directed who was to be his guardian. SDCL 30–27–25 clearly prescribes such protective actions. Furthermore, the appointment of a guardian does not of itself invalidate a will because of a lack of testamentary capacity. *Hastings*, 347 N.W.2d at 350. *See also, Podgursky*, 271 N.W.2d at 56–57.

■ Edith emphasizes the medical testimony and evidence presented at trial. This testimony and evidence, however, like the testimony solicitied by Edith from Donald's friends and neighbors, is years and months fore and aft of October 5, 1979, and we see no reason why the trial court would be required to reject the testimony of those closest to the events of October 5, 1979, and be compelled to accept the medical evidence at face value although substantially removed in time. *See, e.g., In re Wynne's Estate*, 239 Cal.App.2d 369, 372, 48 Cal.Rptr. 656, 658 (1966). *See also, Podgursky*, 271 N.W.2d at 57–58. Additionally, the fact that a testator is ill, hospitalized, or suffering from a disease, does not preclude the existence of testamentary capacity. *See, e.g., Anders*, 88 S.D. 631, 226 N.W.2d 170; *Hobelsberger*, 85 S.D.

282, 181 N.W.2d 455; *Wexler v. Wexler*, 79 S.D. 537, 114 N.W.2d 886 (1962); *In re Brown's Estate*, 55 S.D. 53, 224 N.W. 942 (1929); and *In re Hackett's Estate*, 33 S.D. 208, 145 N.W. 437 (1914). "It was for the trial judge to select from the conflicting evidence that which he would believe. He, not this court, is the trier of the facts." *Hobelsberger*, 85 S.D. at 288, 181 N.W.2d at 458. We must review the facts in a light most favorable to the trial court's findings and all conflicts in the evidence must be resolved in its favor. *In re Metz' Estate*, 78 S.D. 212, 214, 100 N.W.2d 393, 394 (1960). We only ascertain whether there is evidence from which the trial court could properly have drawn its conclusion, *Podgursky*, 271 N.W.2d at 56; and after reviewing the record herein, we find such evidence exists.

## II.

WAS DONALD'S WILL PROCURED BY UNDUE INFLUENCE? THE TRIAL COURT FOUND IT WAS NOT. WE DETERMINE THAT THIS FINDING IS NOT CLEARLY ERRONEOUS.

■ "A testator has the privilege and right to dispose of his property as he chooses within limits and in the manner fixed by statute. The law does not require that he recognize his relatives equally or at all." *In re Blake's Estate*, 81 S.D. 391, 398, 136 N.W.2d 242, 246 (1965). Additionally, the law "does not place obstacles in the way of the aged or infirm in the disposition of their property, provided their mentality meets accepted tests at the time of execution of the testamentary instrument and the same was not procured by the exercise of undue influence." *Id.*, 81 S.D. at 398, 136 N.W.2d at 246. However, when a testamentary instrument, through undue influence, substitutes the wishes of another for those of the testator, the instrument is invalid. 79 Am.Jur.2d *Wills* § 390 (1975). *See also* SDCL 29-2-5. The trial court found that when Donald executed the 1979 Joint Will, he was not acting under restraint, coercion, or undue influence. After examination of the record herein, we

conclude that such a finding is not clearly erroneous. *In re Estate of Pierce*, 299 N.W.2d 816, 818 (S.D.1980).

■ Mavis did not control and was not in charge of Donald's or the Linnells' business affairs. *Compare In re Estate of Borsch*, 353 N.W.2d 346, 348 (S.D.1984), and *In re Heer's Estate*, 316 N.W.2d 806, 808-09 (S.D.1982). On the contrary, the Linnells conducted their own business affairs, although Ilene was primarily in charge. Mavis was not in control of and did not provide the necessities of life. On the contrary, although Donald stayed with Mavis for a short time when the 1979 Joint Will was executed, *compare In re Whitman's Estate*, 45 S.D. 14, 17, 184 N.W. 975, 976 (1921), Donald was on his own during the day and drove himself to and from the hospital and the farm. At all other times, except when staying with Edith, Donald and Ilene cared and provided for themselves. Mavis did not actively participate in the preparation and execution of the 1979 Joint Will. *Compare In re Estate of Shabley*, 85 S.D. 692, 701-02, 189 N.W.2d 460, 464-65 (1971). On the contrary, it was the Linnells who contacted Attorney Wipf and it was the Linnells who requested a new will. In the Summer of 1979, the Linnells had contacted Attorney Wipf about a new will and the 1979 Joint Will was substantively and substantially similar to the 1971 Joint Will. The two Joint Wills establish a constant and abiding scheme for the distribution of property and refute the contention of undue influence. *Pollock*, 320 Ill. at 183, 159 N.E. at 309. *See also, Brink*, 161 N.W.2d 438; *Forsythe's Estate*, 22 N.W.2d 19; *Camin*, 323 N.W.2d 827; and *Dunn*, 171 N.Y.S. 1056. In *Blake's Estate*, 81 S.D. at 400, 136 N.W.2d at 247, we stated that the consistency and harmony of the two wills therein involved, and the considerable time lapse between their respective executions, three years, strongly negates the presence of undue influence and supports a fixed dispositive intent. *See also, Tobin v. Nordness*, 47 S.D. at 257, 197 N.W. at 784. Additionally, Donald's disposition of his property, as be-

tween the parties herein, is not an unexplained unjust or unnatural disposition and it does not give rise to a presumption of undue influence. *Compare In re Vetter's Estate,* 75 S.D. 417, 422–24, 66 N.W.2d 519, 522 (1954). Edith, who occupies a substantially similar degree of kinship as Noble and Karen, has no greater claim to Donald's bounty. *Fleege,* 89 S.D. at 139, 230 N.W.2d at 231.

The trial court found no undue influence, and based on the record herein, we cannot conclude such to be clearly erroneous.

Finally, the resolution of the above two issues makes it unnecessary for us to address the issue raised by the appeal of Lee and Eugene Linnell.

Affirmed.

FOSHEIM, C.J., MORGAN and SABERS, JJ., and McKEEVER, Circuit Judge, concur.

McKEEVER, Circuit Judge, sitting for WUEST, J., disqualified.