CRAMER, Respondent v. CRAMER et ux., Appellants

(131 N.W.2d 102)

(File No. 10079.   Opinion filed October 28, 1964)

**Bogue & Rudolph,** Canton, for defendants and appellants.

**Bogue & Weeks,** Vermillion, **Alfred N. Strand,** Centerville, for plaintiff and respondent.

BIEGELMEIER, P. J.   This is an action to set aside a transfer of property by an elderly person to a relative. On September 18, 1961, plaintiff, a widow, was the owner of 80 acres of farm land in Turner County, South Dakota, which she inherited from her husband. On that day she signed a warranty deed conveying the premises to defendants husband and wife as joint tenants, reserving a life estate. She moved to this farm when she was married in 1916 and lived there for 42 years. In 1958 her husband

died and she moved to a small town nearby. She had no children and apparently no close friends or relatives with whom she did or would confide or procure advice. She was 79 years old, a woman of limited education; had never had gainful employment except as a household servant, was somewhat crippled with arthritis for which she took medication and used a cane to get about. The only business shown to have been done by her was to rent the farm for 1959 and 1960 to her cousin and her transactions with defendants. In the fall of 1960 defendant came to her house and talked about renting the farm. Defendant David C. Cramer is a nephew of plaintiff's deceased husband. It appears there are 45 acres of cropland, 4 or 5 acres building area and 30 acres of pasture on which defendants ran 17 head of livestock. An oral rental arrangement was made on the basis of two-fifths of the crop to plaintiff. The rental as to the pasture and buildings is unclear, but defendants testified they were not to pay any cash rent for these; instead in 1961 they were to perform labor painting the buildings and thereafter were to pay the taxes. The nub of this action is plaintiff's claim she signed a paper believing it was in conformity with an oral agreement she was to sell the land to defendants for $150 an acre and defendants recorded the deed without paying anything to her. Defendants admit plaintiff talked to them or one of them at different times about buying the place, but said they didn't have any money; plaintiff testified to conversations as to the sale price of $150. As to this feature, one defendant didn't remember whether she mentioned it, but if there was such a conversation, it was the very first time, and later denied it; the other defendant said she heard $150 mentioned once.

Defendants admit they never paid plaintiff the sale price she testified to, nor any part thereof. It is not clear whether defendants claim the transaction was a transfer without consideration, that is, a gift or for some consideration, a sale. The complaint alleged a sale of the premises at $150 per acre, that plaintiff was taken to the office of defendants' attorney for the purpose of signing a contract to that end and, relying on representations the deed was in accord with the agreement, she signed the instrument without reading it; that she did not know the deed was delivered to defendants, that a confidential relationship

existed between the parties and delivery of the deed was obtained by fraud, undue influence and violation of trust. The answer generally denied the complaint, and neither claimed the transaction was a sale nor a gift. It merely alleged plaintiff executed and delivered the deed of her own free will and accord.

In passing, while it may not make any difference whether defendants' contention of the transaction is a sale or a gift, it appears by their version to be no usual bona fide sale. Defendants were renting on a basis of a share of the cropland and except for painting buildings the first year were to pay the taxes for use of the pasture and buildings as that offset or balanced that rent. As to their claim of the oral agreement for the transfer of the farm to them, the evidence was:

> "Q * * * you claim that you were going to get this farm as a gift * * * A Well, not necessarily. * * * I wouldn't say it was a gift. * * *
>
> When I have to pay two-fifths of the crop—and the taxes —and keep the place up."

This was no change from the lease arrangement unless "keeping the place up" added something. Paying the usual rental on land to a life tenant 79 years of age with an expectancy of 5 to 7 years, tenants were keeping the place up for themselves as remaindermen. In effect this is a claim of a gift of the fee.

The trial court by extensive findings of fact, found them generally as claimed and testified to by plaintiff and in accord with them and the conclusions of law, cancelled the deed and quieted title in plaintiff.

■■ Insufficiency of the evidence to support many of the findings, conclusions of law and thus the judgment are the main contentions of defendants. Some of defendants' arguments are based and rely on evidence adduced by them. In our review we must accept that version of the evidence, including the inferences that can be fairly drawn therefrom, which is favorable to the trial court's action. Consequently, an appellate court is not free to disturb findings unless they are contrary to the clear

preponderance of the evidence. Hilde v. Flood, 81 S.D. 25, 130 N.W.2d 100. The trial court found there were several talks between the parties for a sale of the farm at $150 per acre; that plaintiff believed the instrument she signed was a contract for sale of the premises for $150 per acre, and was confused, mistaken and misunderstood the nature and import of the deed she signed; that no money or thing of value was ever paid to her and she first understood the nature of the document she had signed when she consulted her attorney in 1962; that the minds of the parties never met on an agreement for transfer in the manner set out in the deed and it was signed by mistake and as a result of a confidential relationship between the parties and the exercise of a dominant influence on her by defendants.

These and some of the other findings as to plaintiff's senility, lack of advice, education, experience, ill health, etc. are challenged in the briefs and while these last stated facts may have been considered by the court and led to the ultimate conclusion, we believe the finding of mistake, surrounded by all the other facts is sustained by the evidence and must result in the affirmance of the trial court's judgment. Plaintiff testified defendant David C. Cramer asked her if she was going to sell it and she said yes; "he asked what I wanted for it, and I told him I wanted a hundred-fifty". He said "Well, I think I'll take it for that". Plaintiff gave one of defendants the abstract which she took to their attorney for examination; the attorney examined it, and by opinion dated September 13, 1961, addressed to David C. Cramer, found "good and marketable title in the said Kate Cramer, free and clear of any encumbrances whatsoever. All taxes for the year 1960 and all prior years are paid in full. Some arrangement should be made for payment of the 1961 taxes."

The employment of an attorney to examine and report on the title is a customary and prudent act of many years standing by a purchaser of real estate. Defendants paid for these services. Defendant David Cramer admitted there was talk in the attorney's office about notes and mortgages if he acquired a deed to the property. Plaintiff testified the paper or deed was laid in front of her in the attorney's office; that she didn't know what was in the writing; she believed it was a sale of the farm for $150 an

acre and relied on her talks with David Cramer; she told the attorney David had to pay that for it and she had so much faith in them she thought defendants would come and pay her anytime they had a little money.

The deed as drawn by defendants' attorney did not conform to plaintiff's version of the sale agreement. Neither did it conform to defendants'. They testified they were to pay two-fifths of the crop, all the taxes thereafter (all taxes due were paid) and "keep the place up". By this they probably meant keep it in repair. Yet the deed conveyed title to them with a life estate reserved to plaintiff. By SDC 51.0710, "The owner of a life estate must keep the building and fences in repair from ordinary waste, and must pay the taxes and other annual charges * * *". The deed as drawn, contrary to their claimed agreement left the tax and repair liability for plaintiff. Defendants point to the fact plaintiff later assigned a fire insurance policy on the farm buildings as indicating her knowledge of the transaction. First, this is a matter for consideration of the trier of fact; second, it is as consistent with a sale, perhaps more so, than the deed, for the insurance transfer was absolute and did not retain or show plaintiff as part owner or an insured, though by the deed she retained a life interest; third, the assignment was to David C. Cramer alone and the deed was to him and his wife. These discrepancies, the admitted confusion as to the terms of the claimed transfer between all concerned, the trust of defendants by plaintiff, her senility and approaching incompetency, and her inability to understand the transaction were for the trial court to consider, draw inferences and find facts. The attorney who acted for defendants died before the trial and testimony as to the agreement came from the parties to the action. We conclude the findings are not contrary to the clear preponderance of the evidence and are sufficient to sustain the judgment.

Plaintiff has argued the trial court may be sustained under the theory defendants are implied trustees under SDC 59.0102(2) and they hold the property as constructive trustees, citing In Re National Benefit Association, 72 S.D. 23, 29 N.W.2d 81. In view of the conclusion reached it is unnecessary to consider these arguments, nor other authorities to support the theory of con-

structive fraud present in Orr v. Allen, 73 S.D. 547, 45 N.W.2d 737, except to mention in the latter case a transfer of property for an inadequate price by a vendor with a mental weakness required protection and advice, without which constructive fraud resulted. The trial court could conclude similar impartial advice and protection was important and had some relevancy here.

Finally it is contended certain findings and conclusions are erroneous because the facts were not pleaded. They were either proper because pleaded or within the scope of the issues presented, and were in evidence without objection in an action tried to the court. No prejudicial error resulted.

Affirmed.

All the Judges concur.