# IN RE BLAKE'S ESTATE

## (136 N.W.2d 242)

### (File No. 10199. Opinion filed June 30, 1965)

**Donn Bennett,** Buffalo, for contestants and appellants.

**Hayes & Richards,** Deadwood, for respondent, Mary Dotson.

**Gale B. Wyman,** Belle Fourche, for respondents, Florence Ingersoll, and others.

**Stephens & Brandenburg,** Belle Fourche, for respondent First Nat. Bank of the Black Hills.

HOMEYER, J. This case involves a contest of the will of Frank Blake. The contestants, Arthur Blake and Callie B. Tinkham, are a nephew and niece of the decedent. They filed an opposition to its probate the essence of which is that the execution of such instrument was procured by the exercise of undue influence upon the deceased by Mary Dotson, one of the beneficiaries. The opposition was disallowed and the contestants appeal.

The questioned will was executed on July 24, 1963, and provides for the following percentage division of the estate: Florence Ingersoll, a niece, 10%; Charlie Ingersoll, niece's son, Cleo Scott Berry, niece, Vernon Scott, nephew, Elsie Blake and Marion Blake (the first wife and the daughter of Arthur Blake, one of the contestants), Louise Hartwell, LeRoy Rathburn, Reuben Juntti, Mickey Karinen (all designated as friends), Bonnie Davis, great niece, and LeRoy Tinkham, niece's son, each 5%; and the remaining 35% to Mary Dotson, the widow of Ralph Dotson, a deceased nephew. The First National Bank of the Black Hills is named as executor.

The prime question raised by the assignments of error is whether the finding of the court below to the effect that there was no undue influence exercised by Mary Dotson is sustained by the evidence.

■■ We review on the elementary principle that the proponents of the will, the respondents herein, are entitled to the benefit of their version of the evidence, and all reasonable inferences deducible therefrom, and that as an appellant court we are not free to disturb the finding of the trial court unless it is contrary to the clear preponderance of the evidence. Cramer v. Cramer, 81 S.D. 94, 131 N.W.2d 102.

The testator, Frank Blake, was a lifelong bachelor and passed away on September 23, 1963, at the age of 87 years. He and his brothers William and Louis for many years had lived together and operated large sheep and cattle ranches in northeastern Wyoming. William died in 1949 and soon afterwards Louis and Frank moved to Belle Fourche, South Dakota, and continued to live together. After William's death, Louis and Frank executed mutual wills leaving their respective estates to each other with provision that when both were deceased all property was to go to the children of Louis, namely Arthur Blake, Callie B. Tinkham, and Robert Blake. The last named was deceased when this proceeding was instituted. Louis Blake died in 1955 and his will was probated in South Dakota with an ancillary administration in Wyoming since the brothers owned about 5,246 acres of land in that state when Louis died.

In May 1959 Frank Blake expressed a desire to make another will and solicited the aid of legal counsel other than counsel probating the Louis Blake estate. A second will was executed in which he left to the children of Louis all property which he inherited from Louis, and he willed all his other property to other relatives. This will is not included in the record and the exact disposition of the estate made by such will is not disclosed. Shortly afterwards, one of the contestants, Arthur Blake, petitioned the County Court of Butte County to have Frank Blake placed under guardianship and a guardian was appointed without prior notice to Frank. This appointment was promptly va-

cated. Then followed negotiations which culminated in a written agreement executed on June 26, 1959, whereby the children of Louis Blake received the property which Frank had inherited from Louis Blake and in return they released and disclaimed all interest in the property of Frank Blake and his estate and released the latter from all contractual obligations arising from or incidental to the execution of the mutual wills. On trial it was urged that contestants by this agreement were estopped from contesting the will. However, the trial court made no finding thereon and estoppel was not the ground on which the contest was denied. Consequently, we consider the execution of this agreement only as a circumstance bearing on the question of undue influence.

In the next fifteen months, and as is not unusual when an elderly person possessed of considerable property and little education and business experience is involved. Frank Blake was beseiged by individuals, perhaps all well intentioned, seeking to aid him in the management and disposition of his worldly goods. Misconstructions of legal documents and misunderstandings prompted ill advised actions which ultimately were rectified after considerable effort and some expense. To avoid a repetition of these occurrences, or at least minimize their possibility, and on the advice of competent legal counsel in two states, Frank Blake on October 13, 1960, petitioned and the District Court of Crook County, Wyoming, appointed, Jay Durfee, a banker of Sundance as guardian of his estate. Durfee continued to act under such appointment until shortly after March 12, 1963, when the Supreme Court of Wyoming in the case of Thoeming v. District Court of the Sixth Judicial Circuit, etc., Wyo., 379 P.2d 543, ruled that under Wyoming law a district court was without jurisdiction to appoint a guardian over the person or estate of an alleged incompetent without a hearing and an adjudication of incompetency. Following this decision Durfee and his counsel took the position that his purported appointment was void and refused to further act thereunder.

On October 11, 1960, Frank Blake had executed a will, Exhibit 14, which was identical to the one which is contested except a 10% bequest was provided for Ralph Dotson and a 25%

bequest for Mary Dotson. Ralph Dotson was the husband of Mary Dotson and died between the dates of these wills. Exhibit 14 was prepared shortly after Frank Blake had conveyed his Wyoming real estate to two of his advisors, both nonrelatives, and had made a will leaving 25% of his estate to one of them. This bequest was eliminated in Exhibit 14 and the name of Mary Dotson substituted in place of the previously designated beneficiary. Mrs. Dotson was present when Exhibit 14 was drafted, but there is no evidence that she took part in its preparation. It was drafted by the same lawyer who had prepared a previous will and represented Frank Blake in his settlement with the Louis Blake children. This lawyer testified as to the circumstances attending the inclusion of this bequest to Mrs. Dotson in the testamentary document. Exhibit 14 was not executed in the lawyer's office, but in the office of a doctor.

The terminal illness of Frank Blake began about 14 months before his death during which period he spent virtually all of his time in hospitals and nursing homes. From June 26, 1963, until his death he was confined to a Rapid City hospital continuously. Durfee refused to further act as guardian and current unpaid bills were accumulating. Likewise, in the Wyoming guardianship, Frank Blake's interest in some Wyoming real estate had been sold and there arose a question as to the legality of such sale. To eliminate title objections, a quitclaim deed from Frank Blake to the purchaser was prepared by Wyoming counsel for the guardian, Durfee, and mailed to Blake's South Dakota counsel at Belle Fourche. Such counsel also prepared a petition for appointment of a South Dakota guardian because of the physical disability of Frank Blake. He also prepared Exhibit 1, the will here contested, which is identical to Exhibit 14, the previous will referred to above, except it deleted the 10% bequest to Ralph Dotson and added such share to the bequest to his widow, Mary Dotson. The testimony of the scrivener is that he prepared Exhibit 1 on his own volition cognizant of Ralph Dotson's death and because of an uncertainty as to intervening wills since Exhibit 14 was executed.

On July 24, 1963, Frank Blake signed the quitclaim deed and also the petition for appointment of the First National Bank of the Black Hills as his guardian. Mary Dotson also signed the same petition. Following the execution of these documents, Frank Blake executed Exhibit 1. The attesting witnesses were the doctor who had attended the testator for the previous fourteen months and one of his special nurses who had been on his case since about July 5th. Also present were the lawyer who prepared the will and Mrs. Dotson. All parties present testified and are in agreement that the will was read item by item to the testator; that he understood the contents; that the difference between Exhibit 14 and Exhibit 1 was carefully explained; that the lawyer offered to change any parts which did not meet with his approval; that Frank deliberated over the percentages; that as to the 35% to Mrs. Dotson, the testator said: "It seems like that's quite a lot." to which Mrs. Dotson responded: "Uncle Frank, we never asked you for anything. We could certainly use it if you left it to us". Frank then said: "I guess its all right".

The record reveals that previous to the execution of Exhibit 1, Mary Dotson whose home was at Lead, South Dakota, had visited Frank Blake in the hospital but once during his terminal illness. During preceding years she and her husband and daughter had made occasional visits to him and the other Blake brothers while they lived on the Wyoming ranch and later in Belle Fourche. Frank Blake did not drive a car and in unravelling some of his ill advised business transactions Mrs. Dotson transported and accompanied him to offices of lawyers. More often he went with others or alone. Geographically she and her husband lived nearest to his home among his few and widely scattered relatives.

■■■ It is conceded by contestants that Frank Blake possessed testamentary capacity during the period when the various guardianships were pending. SDC 1960 Supp. 35.1802 provides for appointment of a guardian of the person and estate, or either, of a person who is insane or "for any cause mentally or physically incompetent to manage his own property * *". See In re Knott's Guardianship, 71 S.D. 53, 21 N.W.2d 59. The

fact of the appointment of a guardian of the estate of a person is evidence of mental condition and properly admissible on either a contest predicated on mental incapacity or undue influence, In re Marsden's Estate, 217 Minn. 1, 13 N.W.2d 765, Page on Wills, (Bowe-Parker Revision) § 29.71, page 566, but it is not an adjudication that a testator is insane and merely establishes the existence of a state of facts qualifying such a person as one for whom a guardian may be appointed. 94 C.J.S. Wills § 37; In re Powers Estate, 81 Cal.App.2d 480, 184 P.2d 319.

The subject of undue influence is not new to this court. Its basic principles have been settled by a long and uniform line of decisions, one of the more recent being In re Metz Estate, 78 S.D. 212, 100 N.W.2d 393. Some of these principles may bear repetition.

 A testator has the privilege and right to dispose of his property as he chooses within limits and in the manner fixed by statute. The law does not require that he recognize his relatives equally or at all. It does not place obstacles in the way of the aged or infirm in the disposition of their property, provided their mentality meets accepted tests at the time of execution of the testamentary instrument and the same was not procured by the exercise of undue influence. Johnson v. Shaver, 41 S.D. 585, 172 N.W. 676; In re Rowland's Estate, 70 S.D. 419, 18 N.W.2d 290. General influence, however strong, not brought to bear on the testamentary act is not undue influence. Influence to be undue must be such as to destroy the free agency of the testator and substitute the will of the person exercising it for that of the testator. In re Armstrong's Estate, 65 S.D. 233, 272 N.W. 799. The essential elements are (1) susceptibility of the testator to undue influence, (2) opportunity for the exercise of undue influence, (3) disposition to exert undue influence, and (4) a result in the will showing the effect of such undue influence. In re Rowland's Estate, supra. The burden is on the contestant to establish undue influence and any evidence which shows susceptibility, opportunity, disposition to use, or a result indicative of undue influence is admissible. Nevertheless, after all such evidence has been received it must be carefully screened in the light of established rules and standards to determine whether

there is substantial evidence to support a finding of undue influence. The evidence, both direct and circumstantial, taken as a whole, must be such as to clearly and unmistakably point to a final document which is the product of the mind of another and not the will of the signator. Mere suspicion, speculation or conjecture that it is does not suffice.

Contestants argue the evidence establishes that a confidential relationship existed between Mrs. Dotson and the testator; that it shows her instrumental in the preparation and execution of the will; hence there was a presumption of undue influence and a burden devolved upon Mrs. Dotson to show that the will, Exhibit 1, was not induced by undue influence.

In the case of In re Rowland's Estate, 70 S.D. 419, 18 N.W.2d 290, this court said:

"The mere existence of a confidential relation between a testatrix and a beneficiary under her will such as attorney and client, physician and patient and clergyman and parishioner does not require a finding of undue influence and does not raise a presumption of undue influence nor cast the burden upon the beneficiary of disproving same. 66 A.L.R. 228. However, the existence of such a relationship may demand close judicial scrutiny. In re Daly's Estate, 59 S.D. 403, 240 N.W. 342. It is the rule in many jurisdictions that when in addition to the confidential relation there exists suspicious circumstances such as the fact that the beneficiary took part in the preparation or procuring of the will, undue influence is presumed and by such proof contestant makes out a prima facie case. 68 C.J., Wills, § 451; Page on Wills, § 818 et seq." See also In re Metz Estate, supra.

The trial court made no finding that a confidential relationship existed and no such finding was proposed by contestants. In the Daly Estate and Metz Estate cases cited above, the trial court specifically found a confidential relationship. We doubt that the evidence here would support a finding that a confidential and fiduciary relationship existed between the testator

and Mrs. Dotson at the time of the execution of the will. Nevertheless, assuming the existence of the confidential relationship contended for, we are of the opinion that applying the foregoing principles of law to the facts, the evidence does not preponderate against the finding that there was no undue influence.

The testator had no near relatives and there was no unnatural disposition of his estate. Nieces and nephews are collateral heirs and because of such relationship alone are not the natural objects of a testator's bounty. The evidence on the degree of affection or animosity between the decedent and Arthur Blake and between him and Mrs. Dotson was in dispute and subject to conflicting inferences. In view of the property settlement and prior occurrences the more persuasive seems to be on the side of a definite ill feeling between the testator and Arthur. Significantly, both in Exhibit 14 executed on October 11, 1960, and in Exhibit 1, executed on July 24, 1963, the contestants were omitted, but the testator saw fit to include Arthur's daughter and first wife as objects of his beneficence. The consistency and harmony of the two wills and the considerable lapse of time between their execution strongly negatives the presence of undue influence and supports a fixed dispositive intention for Frank Blake. 94 C.J.S. Wills §§ 245c, 260. See Tobin v. Nordness, 47 S.D. 255, 197 N.W. 783. We are also of the opinion if under the facts there was any burden cast upon Mrs. Dotson to explain the reason for her sharing in the testator's estate to the extent shown that she has met such burden and the disposition made has been explained.

We have carefully considered the other assignments of error. They relate largely to the receipt or exclusion of evidence. This matter was tried to the court without a jury. In such cases and particularly in will contests considerable latitude and discretion is permissible in the admission and exclusion of evidence which tends to bear on the ultimate issue. Generally we assume the trial court in its findings will disregard incompetent and otherwise improper evidence. The court appears to have been somewhat restrictive in limiting contestant's attempted proof. However, when the evidence is appraised in its entirety,

we conclude contestants were not prejudicially affected by any evidentiary rulings and the judgment entered by the court was the proper one.

Affirmed.

All the Judges concur.