In the Matter of the ESTATE of Edwin C. LANDEEN, Deceased.

John V. LANDEEN, Clarence Landeen, Contestants, and Glen V. Landeen, Contestant and Appellant,

v.

Roy LANDEEN, Respondent.

No. 12029.

Supreme Court of South Dakota.

April 12, 1978.

Dennis L. Duncan of Zimmer, Richter & Duncan, Parker, for contestant and appellant.

Mary Masten & Sam W. Masten, Canton, for respondent.

WOLLMAN, Justice.

This is an appeal by Glen Landeen (appellant) from an order admitting his father's will to probate. We affirm.

On July 31, 1969, Edwin C. Landeen (decedent) executed a will. He was seventy-eight years of age at the time. At the time of his death on February 26, 1975, decedent was survived by his four adult sons, John, Clarence, Glen, and Roy, decedent's wife having predeceased him. Under the terms of the will, Roy, respondent herein, was given the one hundred thirty acre tract of land that had constituted decedent's lifelong farmstead. Respondent was also given the remaining thirty acres in the home farm quarter section on the condition that he pay the appraised value therefor, but not to exceed $200 per acre, equally to his brothers John and Glen, and to Claren Ritter, Clarence Landeen's daughter, such payment to be made within one year of decedent's death.

The will further provided that John and Glen, and Claren Ritter, should receive in equal shares decedent's remaining real estate, consisting of one hundred forty acres of farmland. Finally, the will provided that the residue of decedent's estate should go in equal shares to Roy, John, and Glen, and to Claren Ritter.[1]

The will was duly admitted to probate on April 4, 1975. On July 19, 1975, John, Clarence, and Glen (contestants) filed a petition contesting probate of the will, alleging that on July 31, 1969, decedent was subject to undue influence and duress, that he had executed the will in question because of undue influence and duress, and that Roy Landeen had stood in a fiduciary relationship to decedent and was in a position to exercise influence on decedent at the time the will was executed. The trial court found, however, that on July 31, 1969, decedent was of sound and disposing mind and was not susceptible to outside pressures and influences. The trial court further found that although Roy had had the opportunity to exert undue influence on his father, there was no evidence that he in fact had done so.

The testimony introduced at the hearing amply supports the trial court's findings. Respondent grew up on the home farm and farmed with decedent until decedent and his wife retired and moved to town in 1957. Thereafter, decedent continued to actively assist respondent by coming out from town almost every day for the purpose of operating farm implements and otherwise assisting in the farming operation. Under the terms of the lease between decedent and respondent, decedent received forty percent of the income from the land. Decedent made all of the division of crops under the terms of the lease right up until the time he went into a nursing home in April of 1974. Respondent made numerous improvements upon the farmstead, and decedent indicated to his longtime attorney, Roscoe Frieberg, prior to the time that the will was executed in 1969 that he wanted to make sure that respondent was adequately compensated for the value of the improvements that he had made upon the farm.

Attorney Frieberg testified that decedent was alert and intelligent at the time he signed the 1969 will. He characterized decedent as a very independent person who always took care of his own business. In years past, decedent had served as an administrator of at least two estates and as a guardian of another estate that Mr. Frieberg had represented. According to Mr. Frieberg, decedent had handled these matters very competently. Clarence Landeen

---

1. The will specified that Clarence Landeen's share of the estate was being left to Claren Ritter. The testimony at the hearing on the will contest established that this provision was included by decedent because of the fact that Clarence had become involved in financial difficulties and decedent wished to see Clarence's share pass in a manner that would not be subject to the claims of his creditors.

testified that he thought decedent's mental condition was good on or about the date the will was executed and acknowledged that it would be a fair statement to characterize decedent as a strong-willed person who did what he wanted to do. In November of 1973, decedent was examined by a Sioux Falls physician, Dr. Vincent K. Cutshall, for evaluation of a possible heart condition. With respect to decedent's mental condition in November of 1973, Dr. Cutshall characterized decedent as a "pretty sharp" man who appeared very much to be independent in his own thinking. In Dr. Cutshall's words, "When I saw him in '73 I felt that he was a pretty sharp individual, hard-headed and a little difficult to come back in for appointments. He had a mind of his own . . . ." Although decedent's mental and physical condition started to deteriorate subsequent to November of 1973, there is not a scintilla of evidence in the record to support an inference that decedent suffered from any mental impairment in July of 1969.

We conclude from the foregoing summary of the evidence that the trial court's finding that decedent was not susceptible to undue influence is not clearly erroneous under the test set forth in *In re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455. Indeed, we would have been somewhat surprised had the trial court made any finding other than this. Accordingly, the order admitting the will to probate must stand inasmuch as contestants failed to establish the existence of a principal element of a case of undue influence. As we stated in the case of *In re Rowlands' Estate*, 70 S.D. 419, 426, 18 N.W.2d 290, 293:

> "The essential elements of undue influence, invalidating a will, are (1) a person susceptible to such influence, (2) opportunity to exert such influence and effect the wrongful purpose, (3) a disposition to do so for an improper purpose, and (4) a result clearly showing the effect of such influence."

Because contestants' case so clearly founders on the first element of the test set forth in the Rowlands' case, we deem it unnecessary to discuss in detail events that occurred both prior and subsequent to the execution of the 1969 will that appellant argues demonstrate that respondent was in a position to exert undue influence upon decedent, that he had the disposition to exert such undue influence, and that the will in question shows the effect of such influence. Suffice it to say that our review of the evidence satisfies us that the trial court's findings that respondent did not exert undue influence upon decedent and that there was no evidence that the will showed the result of the exercise of such undue influence are not clearly erroneous. It appears that the instant case reflects the not uncommon situation that results when a farmer has several sons but only one farm. For whatever reason, it was respondent who stayed on the family farm and engaged in what apparently was a harmonious father-son farming operation.[2] The will in question not only does not reflect any unjust or unnatural disposition of decedent's property, it properly carries out decedent's wish that respondent should receive the home place, together with the improvements he had made thereon. As we said in *In re Blake's Estate*, 81 S.D. 391, 398, 136 N.W.2d 242, 246:

> "A testator has the privilege and right to dispose of his property as he chooses within limits and in the manner fixed by statute. The law does not require that he recognize his relatives equally or at all. It does not place obstacles in the way of the aged or infirm in the disposition of their property, provided their mentality meets accepted tests at the time of execution of the testamentary instrument and the same was not procured by the exercise of undue influence."

2. Appellant points to a notice to vacate that decedent served upon respondent in 1962 as some evidence that the relationship between decedent and respondent was not as harmonious as respondent contended. Apparently nothing ever came of this notice to vacate, however, and in any event it could be regarded as another indicia of decedent's independence and strong-mindedness rather than of his susceptibility to respondent's influence.

There is nothing in decedent's will that reflects anything other than decedent's intention that respondent should be rewarded for his investment of time and money in the operation and improvement of the home farm and that beyond that special provision decedent's children should share equally in the disposition of his estate.

■ Finally, appellant contends that the trial court erred in denying contestants' motion for a new trial. This motion was based upon the fact that on February 19, 1976, some seven days before the trial court entered its findings of fact, conclusions of law, and the order admitting the will to probate, Mr. Frieberg sent John and Glen Landeen and Claren Ritter each a bank money order in the amount of $2,000, together with a covering letter explaining that the money was tendered in accordance with the provisions of decedent's will that respondent should make payment for the remaining thirty acres in the home quarter section within one year of decedent's death. Appellant argues that Mr. Frieberg's actions violated the rule we announced in *Jones v. South Dakota Children's Home Society,* S.D., 238 N.W.2d 677, that if an attorney continues to represent a client after becoming a witness in the case forming the basis for the representation, the testimony of the attorney will be considered incompetent and will be stricken from the record. In response to contestants' motion, respondent submitted an affidavit in which Mr. Frieberg stated that on his recommendation respondent had engaged attorney Sam Masten to represent him, Mr. Frieberg assuming that he might become a witness in the will contest proceedings. Mr. Frieberg further stated that thereafter Mr. Masten had handled the estate, that he, Mr. Frieberg, had not participated in the trial of the case, in the writing of the trial brief, or in the preparation of the findings of fact and conclusions of law, and that he had sent the money orders and the covering letters at Mr. Masten's request. Finally, Mr. Frie-

berg's affidavit stated that he was to receive no compensation for his services other than that which would be determined to be proper compensation for the work that he had done with respect to the probate of the estate prior to the time that the contest was filed. Respondent also submitted an affidavit in which Mr. Masten stated that he had asked Mr. Frieberg to obtain the bank checks and make tender of payment under the terms of decedent's will in order to avoid any question of nonperformance, and that he had made this request in order to save the time and expense that would have been necessary had respondent been required to travel back and forth between his home and Mr. Masten's office for the purpose of securing and mailing the checks.

We conclude that the trial court did not err in denying the motion. There is nothing in the record that would in any way call into question the truthfulness of the affidavits submitted by respondent in response to the motion. We note that Mr. Frieberg complied with the rule of the *Jones* case long before that rule was announced. See *In re Estate of Fleege,* S.D., 230 N.W.2d 230. We are satisfied from the affidavits that Mr. Frieberg's action in securing and mailing the money orders was in the nature of a friendly, gratuitous accommodation to a brother attorney and did not constitute continued representation of a former client within the meaning of the rule announced in the *Jones* case.

The order admitting decedent's will to probate is affirmed.

All the Justices concur.