## In the Matter of the ESTATE OF Anna WEICKUM, Deceased.

### Nos. 13452, 13521.

Supreme Court of South Dakota.

Argued Jan. 21, 1982.

Decided March 17, 1982.

Robert R. Schaub of Larson, Sundall, Larson & Schaub, Chamberlain, for contestants and appellants Mary Ertzner, Josephine Hedlund, Twila Holderfield, Vera Kuhr, Violet Maska and Judith Stover.

Wally Eklund of Johnson, Johnson & Eklund, Gregory, for proponent and appellee Victor Weickum.

DUNN, Justice.

This is an appeal (# 13452) from a will contest involving appellants Mary Ertzner, Josephine Hedlund, Twila Holderfield, Vera Kuhr, Violet Maska and Judith Stover (contestants) and appellee Victor Weickum (proponent). The trial court admitted decedent Anna Weickum's last will and testament of December 3, 1978, to probate. Contestants also appeal (# 13521) from the separate order entered by the trial court which assessed costs and attorney fees against them. We affirm appeal # 13452 and reverse and remand appeal # 13521.[1]

Decedent died on October 4, 1980, at the age of eighty. She was predeceased by her husband, George Weickum, who died testate on July 31, 1978. Decedent was survived by ten children: the six above-named contestants, the proponent, William Weickum, Georgiana Leighton, and Ralph Weickum.

For approximately twenty years, decedent and her husband spent their summers in Tripp County, South Dakota, and the remainder of the year in Omaha, Nebraska. While in Omaha, they lived alone in an apartment until the last few years when they lived with their son William. Many of the children lived in the Omaha area. During this same period of time, proponent lived just a few miles from his parents' Tripp County farm. He rented 320 acres of land from his parents. Ralph rented about 480 acres of land from his parents until he moved to Montana in 1977.

The family relationships were amicable until 1975. Then decedent began writing letters to and had conversations with one or more of the contestants about proponent's failure to give an accounting to decedent and her husband for the corn money and rental money. One or more of the contestants questioned proponent on this matter and the issue was resolved. This incident, however, seems to have caused concern among the contestants regarding their parents' property.

In April of 1976, Twila, Mary, Judy, Josephine, William and the proponent met with Ruben Maulis, an attorney in Winner, South Dakota, about drafting wills for decedent and her husband. Neither decedent nor her husband was present at the time the wills were drafted by Maulis, nor did they consult with Maulis regarding the content of the wills. The wills were then taken to Omaha by some of the contestants and executed.

After the death of George Weickum, his April 1976 will was admitted to probate. The will gave to decedent an undivided one-half interest in all his property. The remaining half was to be divided equally between the ten children. Some of the contestants admitted at trial, however, that their father intended that decedent be entitled to all the income from the estate. During the probate of the estate, proponent and Ralph attempted to have the heirs assign all the income of the estate to decedent. Contestants refused to effect the assignment. On August 29, 1979 a hearing was held on the petition for Family Allowance and Homestead Exemption. Contestants vigorously questioned proponent regarding the estate income and discovered that proponent had incorrectly reported corn and hay income. Proponent also agreed to increase his rent payments for estate land in the future. The contestants who attended this hearing sat across the room from decedent and only conversed for a short time with her.

A few months later, decedent asked attorney William Day to prepare a will for her. Decedent arrived at Day's office accompanied by William and proponent. Day asked the two sons to leave while he discussed the provisions of the will with decedent. Day had previously represented proponent during the final closing of George Weickum's estate. Decedent told Day that she did not want contestants to inherit any-

---

1. Appellant failed to serve notice of appeal as required by SDCL 15–26A–4(2) on William Weickum, Georgiana Leighton and Ralph Weickum who were parties to the action but not represented by counsel at the trial. This does not affect the validity of this appeal; however, future appellants should comply with this statute or their appeal may be subject to dismissal.

thing because of their improper treatment of her during the probate of her husband's estate. Under the will, which was executed on November 13, 1979, in Day's office, contestants received nothing and William, Ralph, Josephine and proponent received portions of the estate.

On December 3, 1979, decedent again went to see Day. Because Day was absent, she was referred to his partner, J. M. Grossenburg. Decedent stated that she wanted to add some initials to the November will and to add a bequeath in the amount of $500.00 for each of the contestants. Grossenburg testified that this conversation was conducted in private.

■ In reviewing this matter, we must give due regard to the opportunity of the trial court to judge the credibility of the witnesses. The trial court's findings of fact shall not be set aside unless they are clearly erroneous. SDCL 15–6–52(a); *In re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (1970). Contestants urge that the clearly erroneous standard is not applicable here because a substantial part of the record consists of letters from decedent to the contestants, bank account records and records from the estate of decedent's husband. In addition to these written exhibits, however, the trial court heard oral testimony from fifteen witnesses which included testimony from proponent and all contestants. The transcript of the oral testimony at the trial consists of 457 pages. The oral testimony of the witnesses, to some extent, concerned the physical and mental strength of decedent, which is material regarding the question of decedent's susceptibility to undue influence and fraud. *In re Estate of Shabley*, 85 S.D. 692, 189 N.W.2d 460 (1971). We conclude that, under the circumstances of this will contest, we must review the evidence under the clearly erroneous rule as set forth in *Estate of Hobelsberger, supra.*

In their contention that the trial court erred in finding there was no undue influence, contestants allege that a confidential relationship existed between decedent and proponent raising a presumption of undue influence and that the finding of no undue influence was not supported by the evidence.

■ A confidential relationship exists whenever a decedent has placed trust and confidence in the integrity and fidelity of another. *In re Estate of Hobelsberger, supra.* The existence of a confidential relationship does not raise a presumption of undue influence, however, unless the beneficiary actively participated in the preparation and execution of the will and unduly profited therein. *In re Estate of Anders*, 88 S.D. 631, 226 N.W.2d 170 (1975); *In re Estate of Hobelsberger, supra; In re Metz' Estate*, 78 S.D. 212, 100 N.W.2d 393 (1960). The evidence at trial indicates: that decedent handled and managed her own business affairs, checking accounts, and investments without substantial advice from her children; that the primary reliance on her children was for transportation needs; and that decedent's children did not participate in the preparation or execution of the December 3, 1979 will. In conclusion, the trial court's finding of no confidential relationship was not clearly erroneous. Even if a confidential relationship had been established, the record does not support a presumption of undue influence.

■ Under SDCL 29–2–5, a will procured by undue influence may be declared void. To establish the existence of undue influence, contestants must prove by a preponderance of the evidence four essential elements: (1) decedent's susceptibility to undue influence, (2) opportunity to exert such influence and effect the wrongful purpose, (3) a disposition to do so for an improper purpose and (4) a result showing the effects of such influence. *Matter of Estate of Pierce*, 299 N.W.2d 816 (S.D.1980); *Matter of Estate of Landeen*, 264 N.W.2d 521 (S.D. 1978).

■ With regard to decedent's susceptibility to undue influence, the trial court in its findings of fact found that decedent was a "vigorous, strong-willed and mentally alert individual" at the time she executed her December 3, 1979 will. This finding is supported by the testimony of Grossenburg

and Day. Grossenburg testified that decedent was mentally competent at the time the will was signed. Day testified that he discussed with decedent at length her family, her property, the problems she had with her six youngest children during the probate of her husband's estate, and the fact that none of her children had told her what to put in her will. In addition, some of the contestants testified as to the alertness of their mother. Vera and Violet testified that decedent was a woman who knew her own mind. Judy stated that decedent was a strong-willed individual who was not very easy to influence. Mary testified that she thought decedent was competent when her will was signed on December 3, 1979. The trial court was not clearly erroneous in finding that decedent was not susceptible to undue influence.

Because contestants fail to meet the first element of the undue influence test, we deem it unnecessary to discuss in detail the evidence which contestants argue demonstrates that proponent had the opportunity to exert influence upon decedent, that he had the disposition to exert such influence, and that the will in question shows the effect of such influence. *See Matter of Estate of Landeen, supra; In re Estate of Anders, supra.* The trial court found that the decision of decedent to treat her children other than equally resulted from the acts and conduct of contestants toward decedent during the probate of George Weickum's estate and that the December 3, 1979 will was not the result of undue influence. Our review of the record satisfies us that the trial court's findings were not clearly erroneous.

As we said in *In re Blake's Estate,* 81 S.D. 391, 398, 136 N.W.2d 242, 246 (1965): "A testator has the privilege and right to dispose of his property as he chooses within limits and in the manner fixed by statute. The law does not require that he recognize his relatives equally or at all." *See also Matter of Estate of Zech,* 285 N.W.2d 236 (S.D.1979); *Matter of Estate of Landeen, supra.* There is nothing in decedent's will

that reflects anything other than her disappointment with contestants resulting from their behavior during the probate of George Weickum's estate. We find that the trial court was correct in finding no undue influence.

■ Contestants allege that the trial court erred in concluding that decedent's December 3, 1979 will was not executed as a result of fraud. We disagree. Fraud in the inducement of a will consists of false statements of fact willfully made by a beneficiary to a testator, which are made in bad faith or with the intent of deceiving the testator, and which do deceive him and induce him to make a will he would not otherwise have made. *Crawford v. Crawford,* 218 Ga. 369, 128 S.E.2d 53 (1962); *In re Hollis' Estate,* 234 Iowa 761, 12 N.W.2d 576 (1944); *In re Roblin's Estate,* 210 Or. 371, 311 P.2d 459 (1957); 1 H. Page, Wills § 14.6 (Bowe-Parker rev. 1960). Contestants claim that the following false statements were made to decedent by proponent or one of his brothers: that Ralph and proponent were required by law to take executors' fees in the George Weickum Estate; that decedent would get no benefit from paying her share of the estate's deficiency; that proponent had to pay rent to the estate on his own pasture; that the estate took proponent's hay; and that Mary's husband verbally attacked decedent while testifying during the hearing on the petition for the Homestead Allowance.

■■ The burden rests on contestants to prove the elements of fraud. In this instance, contestants failed to prove that the misrepresentation caused decedent to act on the fraud. *See In re Roblin's Estate, supra.* Rather, the court found that decedent decided to bequeath a larger portion of her estate to William, Georgiana, Ralph and proponent, because of the contestants' acts during the probate of the George Weickum Estate. There is no showing that decedent changed her will as a result of the alleged false statements.[2]

---

2. We do not find *In re Vetter's Estate,* 75 S.D. 417, 66 N.W.2d 519 (1954) applicable to the

present case because the question before us

Contestants argue that eleven letters from decedent to her daughters should have been admitted into evidence by the trial court. We have reviewed the letters and find that the trial court did not err in excluding them as irrelevant.

■ In their second appeal, contestants allege that the trial court did not have the authority to award attorney fees as part of the costs in a will contest brought before the will was admitted to probate. We agree. Generally, the trial court would have authority to enter a judgment including an award of costs in probate matters. SDCL 30–2–5. The term "costs" is not understood to include attorney fees, however, and the trial court may allow attorney fees as costs for or against a party to an action only if provided for specifically by statute. SDCL 15–17–7; *Tracy v. T. & B. Construction Company*, 85 S.D. 337, 182 N.W.2d 320 (1970).

Proponent contends that SDCL 30–7–8 specifically provides for an award of attorney fees in this instance. SDCL 30–7–8 states:

> The fees and expenses must be paid by the party contesting the validity or probate of the will, if the will in probate be confirmed. If the probate be annulled and revoked, the costs must be paid by the party who resisted the revocation, or out of the property of the decedent, as the court directs.

This provision, however, is not applicable to cases involving the contest of wills before probate. The legislative history of SDCL 30–7–8 reveals that the statute was originally enacted, in its present form, as part of the Probate Code of 1877. Article IV, in which the foregoing section was found, was entitled "Contesting Will After Probate." Article II, entitled "Contesting Probate of Wills," was applicable to the contest of wills prior to probate and did not provide for an award of costs and expenses to the prevailing party. SDCL 30–7–8 is presently found in SDCL ch. 30–7 which is entitled "Revocation of Probate." In light of this legislative history, we find that SDCL 30–7–8 is not applicable to cases involving the contest of wills before probate. *See In re Estate of McConnell*, 101 Ariz. 538, 421 P.2d 895 (1966); *In re Olmstead's Estate*, 120 Cal. 447, 52 P. 804 (1998). Because we can find no other provision under which the allowance for attorney fees can be upheld, we reverse the decision of the trial court and remand on this issue.

In conclusion, we affirm # 13452 (the order admitting decedent's will to probate) and reverse # 13521 (the order assessing attorney fees against contestants) and remand for further action not inconsistent with this decision.

All the Justices concur.

does not involve a claim of fraud based on a wife's claim to her common-law right of dower.