Cecil L. **POPE**, Contestant and Appellant,

v.

Mildred N. **BROWN** and Mable G. Martin, Proponents and Appellees.

No. 14392.

Supreme Court of South Dakota.

Considered on Briefs May 23, 1984.

Decided Nov. 7, 1984.

Wm. Jason Groves, Rapid City, for contestant and appellant.

Samuel W. Crabb, Rapid City, for proponents and appellees.

MORGAN, Justice.

This appeal is from a will contest tried in the Seventh Judicial Circuit. The trial court denied Cecil L. Pope's (Pope) petition to contest a will made by her sister, the decedent, Marie Gonzales (Gonzales). The will was admitted to probate on September

13, 1983, upon the petition of Mildred N. Brown (Brown) and Mabel G. Martin (Martin), both sisters of Pope and Gonzales. Notice of appeal was filed October 21, 1983, pursuant to SDCL 15–26A–3, which permits appeal from a judgment or order which affects a substantial right. We affirm.

Gonzales was a California resident most of her adult life. After her second husband's death, she resided there with her sister Cecil Pope, the opponent, who took care of her much as the other sisters did after her move to Rapid City. On September 18, 1979, Gonzales executed a quit claim deed conveying her house to herself and Pope as joint tenants, and thereby indirectly altered a will she had executed on March 1, 1976, in California. The trial court specifically found that (1) decedent did not recall this transfer until she discovered it while checking on her property taxes, and (2) that decedent was irate when she discovered the transfer and made a new will in South Dakota on June 13, 1980. Gonzales disinherited Pope under the terms of the South Dakota will because, as she explained to Brown and to Potter, the attorney who drafted the new will, under the joint tenancy Pope would get the house worth over $75,000 when Gonzales died. The house comprised almost half of the total value of the Gonzales estate. The South Dakota will provided for certain minor bequests to Brown's grandchildren with the residue to be split three ways, one-third to Martin, one-third to Brown and one-third to Stephanie Marino, a grand niece who had lived with decedent for several years and with whom she was very close.[1]

Marie Gonzales died on January 14, 1982, in Rapid City, South Dakota. On January 28, 1982, the proponents of the South Dakota will, Brown and Martin, two of her three living sisters, petitioned the trial court for probate of the South Dakota will which named them co-executrixes. The proponents requested that letters testamentary be issued to them under the South Dakota Independent Administration of Estates Act, SDCL ch. 30–18A.

Pope's petition to contest the will alleged (1) that the decedent lacked testamentary capacity before the will was made, at the time it was made and thereafter, (2) that the South Dakota will was not properly attested and executed because decedent did not sign it in the presence of the witnesses or acknowledge to them that the signature was hers or was made by her authority, (3) that the witnesses did not sign in each other's presence or in the decedent's presence, and (4) that the proponents coerced and exerted undue influence through their confidential relationship with decedent in order to get her to execute and sign the South Dakota will. The trial court denied Pope's petition to contest the will and admitted the South Dakota will to probate. Pope raises only two issues on this appeal: (1) Did the proponents meet their burden of going forward with the evidence after the showing of a confidential relationship? (2) Did the attorney preserve his neutrality after he received notice that a will contest had been filed?

Pope appeals the trial court's finding that Brown and Martin did not exert undue influence as evidenced by the fact that they did not unduly profit from their confidential relationship with Gonzales. Pope specifically contends that the proponents did not meet their burden of going forward after a confidential relationship was shown.

Under SDCL 29–2–5, a will procured by undue influence may be denied probate. The essential elements of undue influence are: (1) a person susceptible to such influence, (2) opportunity to exert such influence and effect the wrongful purpose, (3) a disposition to do so for an improper purpose, and (4) a result clearly showing the effect of such influence. The burden of proof with respect to es-

---

1. The California will provided for distribution of the residue to Pope, Brown, and Martin in equal shares.

tablishing the fact of undue influence is ordinarily placed on the contestants, and this burden is satisfied by a preponderance of the evidence. *In Re Estate of Anders*, 88 S.D. 631, 637–38, 226 N.W.2d 170, 174 (S.D.1975); *Estate of Nelson*, 274 N.W.2d 584 (S.D.1978). Undue influence cannot be found unless the will *clearly* shows the effect of such influence. *Estate of Metz'*, 78 S.D. 212, 100 N.W.2d 393 (1960). A presumption of undue influence arises when there is a confidential relationship between the testator and a beneficiary who actively participates in preparation and execution of the will *and unduly profits therefrom*. *Matter of Estate of Weickum*, 317 N.W.2d 142 (S.D. 1982). A confidential relationship, such as the trial court found here, " 'does not require a finding of undue influence or raise a presumption thereof, or even cast upon the beneficiary the burden of disproving undue influence.' " *Anders*, 88 S.D. at 637, 226 N.W.2d at 173 citing *Quist v. Beto*, 81 S.D. 375, 135 N.W.2d 730 (1965). "A presumption of undue influence arises only where the beneficiary actively participated in the preparation and execution of the will *and unduly profited therein*." *Anders*, 88 S.D. at 637, 226 N.W.2d at 174 (emphasis added); *Metz', supra*. The trial court found that Brown was in a confidential relationship with decedent, did actively participate in formulating the will, and had the opportunity to influence Gonzales, who in turn was susceptible to that influence. In light of these findings, the trial court concluded that as a matter of law he must balance the evidence under the presumption that undue influence had been exerted. Even with the weight of the presumption to the other side, however, the trial court concluded that proponents did not exert undue influence. "[O]n appeal this court reviews the findings of fact under the 'clearly erroneous' standard." (citation omitted) The conclusions of law are reviewed under the usual "in error as a matter of law [standard]." *Taylor Oil Co. v. Weisensee*, 334 N.W.2d 27, 29 (S.D.1983).

■ The trial judge described the confidential relationship between the proponents and Gonzales as "the natural type of relationship between family members." As the trial judge said in his memorandum opinion, which was incorporated into the findings and conclusions, the relationship was in fact the same type of relationship that existed between Gonzales and Pope prior to decedent's move to Rapid City. The key evidence behind Findings of Fact 37 and 38, that Brown and Martin did not exert undue influence or take unfair advantage of Gonzales was the fact that they did not unduly profit from the relationship. While it is true that Brown's grandchildren received certain personal property,[2] and that Brown received the right to keep certain personal property if she chose to do so, the replacement of Pope with Stephanie precluded undue profit for Brown and Martin.

■ Where a confidential relationship exists, only the burden of going forward with evidence showing that no unfair advantage of the decedent was taken shifts to the beneficiary. *Anders, supra*. In this case, the will itself is evidence that proponents did not personally benefit substantially under the South Dakota will. The bequests were not unjust or unnatural and do not alone constitute sufficient basis for requiring the proponents to show some reasonable explanation of the will's character. *See Johnson v. Shaver*, 41 S.D. 585, 172 N.W. 676 (1919). A testatrix has the right to select the objects of her bounty, *Estate of Burns*, 78 S.D. 223, 100 N.W.2d 399

2. To Stephanie P. Marino—Iron bed stead, spring and mattress, chest of drawers, automobile, desk, diamond ring.
To Violet Carnes—Diamond wedding set from Lupe, Silver set.
To Mackinzie P. Linn, Diamond set platinum wedding ring from Darrel.
To Ruth Marie Carnes, set of dishes.
To Scott Marino, stero (sic).
To Valeria Marino, the dishwasher.
To Harry Carnes, the stamp collection and coin collection, except currency.
To Valerie Marino, Scott Marino and Stephanie Marino, all beddings, linens included, to share and share alike.
To Mildred Brown, Two (2) fur pieces, and currency collection.

(S.D.1960), and no presumption of undue influence arises from the fact that the benefits received under the will were obtained by acts of kindness of the beneficiary. *Estate of Podgursky*, 271 N.W.2d 52 (S.D. 1978).

This court has held that when the trial court finds a confidential relationship but the opponent fails to meet the burden by showing participation in preparation *and undue profit*, no presumption arises. *Estate of Pierce*, 299 N.W.2d 816 (S.D. 1980). The finding of a relationship does, however, require "close judicial scrutiny." *Id.* at 819. After considering the evidence in this case, the trial judge concluded that influence, however strong or controlling, not brought to bear on the testamentary act, is not sufficient to support a finding or conclusion of *undue* influence. *See Pierce, supra; In Re Blake's Estate*, 81 S.D. 391, 136 N.W.2d 242 (1965). We cannot conclude that the trial court was clearly erroneous in its findings of fact or that it erred as a matter of law in its conclusions.

The second and final issue on appeal involves the conduct of the attorney who drafted the will. Pope believes that this attorney also represented Brown and Martin in the will contest and that his testimony was therefore incompetent. SDCL 19–1–3 provides that:

When an attorney is a witness for his client upon any trial except as to merely formal matters such as the attestation or custody of an instrument or the like, he shall not further participate in such trial. This section shall not apply when such attorney's testimony is offered in answer to evidence received on behalf of the other party and it shall appear to the satisfaction of the court that such attorney had no reason to anticipate the necessity of his being a witness. Neither shall this section apply to state's attorneys and the attorney general and their deputies when engaged in the discharge of official duties.

The Code of Professional Responsibility, which is appended to SDCL ch. 16–18, further provides that:

(B) A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:

(1) If the testimony will relate solely to an uncontested matter.

(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.

(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.

This court has held that when an attorney continues to represent a client after testifying in relation to matters involving representation of the client, the testimony is to be stricken from the record and considered incompetent. *Jones v. S.D. Children's Home*, 90 S.D. 126, 238 N.W.2d 667, 680 (1976). In *Jones*, the attorney who drafted the will testified for the proponent regarding execution and attestation of the will and as to his impressions and observation of the testator's capacity to execute a will. 238 N.W.2d at 679. The attorney and his partner were representing the proponents of the will at the time he testified and continued to represent them throughout the proceedings. *Id.* This court pointed out in the *Jones* opinion that the conflict of interest presented in that situation was obvious in that the attorney's testimony went to the will's admissibility to probate and admission of the will entitled the drafting attorney and his partner to probate a sizeable estate. *Id.* The court explained that "[t]here would have been nothing improper at all about ... [the attorney] testifying if it had not been for the fact that he and his partner ... were at the same time

representing the proponent of the will at the trial." 238 N.W.2d at 679. The attorney in *Jones* was listed as one of the attorneys of record for the proponent and offered the will for probate. *Id.* The contestant's challenge was considered without reference to the attorney's testimony. *Id.*

In *Matter of Estate of Landeen,* 264 N.W.2d 521 (S.D.1978), the contestants argued that the proponent's attorney violated the *Jones* rule by continuing to represent a client after testifying in the case, which formed the basis of the representation. 264 N.W.2d at 524. The attorney in *Landeen* stated in an affidavit that because he had prepared the will, he assumed he would testify in the will contest and he had recommended that proponents engage another attorney to represent them in that action. *Id.* The attorney further stated that the other attorney handled the estate, tried the will contest, wrote the trial brief, and prepared findings and conclusions. *Id.* The attorney in *Landeen* asserted that he received no compensation for his services other than appropriate compensation for probate work done prior to filing of the will contest. *Id.* This court held that under the facts set out in *Landeen* the attorney had complied with the *Jones* rule. *Id.*

In this case, Potter, the attorney who drafted the will, testified that he had nothing to do with the will he prepared for Gonzales after he turned it over to Brown. When Brown notified him of Gonzales' death, he introduced her to Mr. Crabb who then handled the will contest. Potter told Crabb that in his opinion the will was valid and explained why Pope had been disinherited. Subsequently, Potter had limited involvement; he merely notarized and witnessed authorizations for Gonzales' medical records that were prepared in the offices he shared with Crabb and he notarized a letter dated January 8, 1980, to a savings and loan in California for the purpose of transferring the Gonzales accounts. Potter testified that he shared offices and secretaries with Crabb but there was no partnership arrangement. Potter apparently gained nothing as a result of the trial court's conclusion that the South Dakota will was valid.

 Potter's testimony went primarily to the drafting of the will and his relationship with the parties. Testimony regarding the decedent's testamentary capacity was also elicited. Even disregarding this testimony under the *Jones* rule, there is ample evidence in the record to support the trial court's conclusion that the will was valid and we cannot say that the trial judge erred as a matter of law in failing to strike Potter's testimony.

We affirm.

All the Justices concur.

DUNN, Retired Justice, participating.

WUEST, Circuit Judge, acting as Supreme Court Justice, not participating.